*In re* ESTATE OF LOUELLA J. DeKOEKKOEK, an Incompetent.—(JOHN VALCARENGHI, Conservator of the Estate of Louella J. DeKoekkoek, Petitioner-Appellee, *v.* RICHARD C. MOENNING, Respondent-Appellant.)

First District (5th Division)   No. 78-1864

Opinion filed September 14, 1979.

Richard C. Moenning, of Chicago (Paul E. Plunkett, of Mayer, Brown & Platt, of counsel), for appellant, *pro se.*

William M. Getzoff, of Getzoff, Rothbart & Getzoff, of Chicago, for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

John Valcarenghi, conservator of the estate of Louella J. DeKoekkoek, brought this action under section 16—1 of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 16—1), petitioning for a citation against Ms. DeKoekkoek's former attorney, Richard C. Moenning. The petition alleged that Moenning knew that Ms. DeKoekkoek was incompetent when she retained him, that he charged her excessive fees and that he unlawfully discounted a certificate of deposit that had been issued to her. The trial court entered judgment against Moenning in the amount of $4685. On appeal, Moenning contends that (1) the trial court was without subject matter jurisdiction; (2) the finding that Ms. DeKoekkoek was incompetent during the time Moenning represented her prior to the original adjudication of incompetency was against the manifest weight of the evidence; (3) it was error to deny Moenning's motion for a change of venue; (4) Moenning's motion for a jury trial was improperly denied; (5) the trial court erred in refusing to appoint a guardian ad litem for the citation proceedings; and (6) judgment should have been entered for Moenning at the close of petitioner's case. We reverse.

Ms. DeKoekkoek had contacted Moenning in February 1977 and asked him to represent her with regard to her claim that her church, the Illinois Conference of Seventh Day Adventists (the Conference), and her pastor, Valcarenghi, had induced her to execute an irrevocable trust in which the Conference was named as trustee and sole remainderman of her personal and real property. She also complained that the Conference's practices in administering the trust were questionable. In July 1977 Ms. DeKoekkoek signed a retainer agreement in which she agreed to assign a $10,000 certificate of deposit to Moenning as a retainer.

Moenning represented Ms. DeKoekkoek until October 1977, when she wrote him that she would not pursue the case further and no longer needed his services. On October 31, 1977, Valcarenghi petitioned the court to have Ms. DeKoekkoek declared incompetent and to have himself named as conservator of her estate. Ms. DeKoekkoek was found incompetent on December 22, 1977, and the following day, Valcarenghi, the newly appointed conservator of her estate, petitioned for leave to file a citation against Moenning. An amended petition was filed on January 6, 1978, before the return date of the first citation, seeking production and delivery by Moenning of documents concerning Ms. DeKoekkoek, an accounting of fees charged her and an accounting of her funds. The petition also sought attorney's fees and costs and other relief "which may be necessary."

Following further proceedings in which Moenning sought a change of venue, filed a special appearance in an attempt to challenge the court's subject matter jurisdiction and unsuccessfully requested the appointment of a guardian ad litem, Valcarenghi was given leave to file a second amended petition on May 19, 1978. The petition was filed on June 3, 1978, and sought the return of $3835 paid to Moenning as fees, and $1450, the amount by which one of the certificates of deposit was discounted. Moenning filed his answer and raised an affirmative defense and counterclaimed against Valcarenghi for his own expenses in the litigation. Moenning simultaneously demanded a jury trial, which was denied.

At the trial, Moenning was called as an adverse witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60) and testified regarding his dealings with Ms. DeKoekkoek and his actions on her behalf. He had corresponded with her and had spoken with her many times during the period of his representation. He had also corresponded with a representative of the Conference in an effort to get records pertaining to the trust, had written to the Grain Terminal Association regarding the certificate of deposit, and had discussions with some banks in unsuccessfully seeking a loan on Ms. DeKoekkoek's behalf. Moenning also testified that he had begun handling most of Ms. DeKoekkoek's personal affairs in September 1977. Numerous documents were admitted into evidence, including detailed billings for Moenning's services, correspondence with Ms. DeKoekkoek and her sister, the retainer agreements and the trust agreement. No other evidence was offered for Ms. DeKoekkoek's estate.

Moenning then presented the testimony of Jack Du Bow, the guardian ad litem in the proceeding for adjudication of incompetency, who stated that he believed Ms. DeKoekkoek to be competent and that all of the papers and records she maintained were thorough and legible. Doug Carroll, a security broker at Wayne Hummer & Co., testified regarding his attempts to find a current market for the certificate of deposit that was later discounted. He believed that, in light of the current market, the discount was extremely fair.

The trial court found that Ms. DeKoekkoek had been incompetent during the period she was represented by Moenning and ordered him to refund the legal fees collected from her and return the amount of the note's discount, and entered judgment against Moenning for $4685. Moenning filed a notice of appeal from that judgment order.

Opinion

Respondent Moenning first contends that the trial court was without subject matter jurisdiction because the original petition and amended petition did not seek the adjudication of property rights and therefore did

not comply with section 16—1(a) of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 16—1(a)), which requires that the petition contain a request for the relief sought. We disagree with that contention.

■■ While the original petition and the amended petition sought only the discovery of assets, they are superseded by the second amended petition which is complete in itself and contains no references to the earlier pleadings. (*Bowman v. County of Lake* (1963), 29 Ill. 2d 268, 272, 193 N.E.2d 833, 835, *appeal dismissed and cert. denied, sub nom. Bowman v. Lake County Public Building Com.* (1965), 382 U.S. 13, 86 S. Ct. 44, 15 L. Ed. 2d 9; see also *Field Surgical Assoc., Ltd. v. Shadab* (1978), 59 Ill. App. 3d 991, 994, 376 N.E.2d 660, 663; *Yarc v. American Hospital Supply Corp.* (1974), 17 Ill. App. 3d 667, 670, 307 N.E.2d 749, 752.) Furthermore, section 46 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 46) expresses a liberal policy toward the amendment of pleadings (*First National Bank & Trust Co. v. Sousanes* (1978), 66 Ill. App. 3d 394, 384 N.E.2d 30; *Anderson v. Rick's Restaurant & Cocktail Lounge* (1977), 45 Ill. App. 3d 992, 360 N.E.2d 465), and to accept respondent's position would necessitate the conclusion that the trial court abused its discretion in allowing the second amendment. (*Cf. Birchfield v. Wabash-Monroe Garage & Parking Corp.* (1969), 113 Ill. App. 2d 178, 252 N.E.2d 89.) Finding no evidence of an abuse of discretion, we will look only to the second amended petition in determining whether it was sufficient to invoke the trial court's jurisdiction.

■■ Section 16—1(a) has been held to create a statutory remedy which requires strict compliance with its provisions, and a trial court will not have jurisdiction to adjudicate any property rights thereunder unless specifically asked to do so in the prayer for relief. (*Schlieper v. Rust* (1977), 46 Ill. App. 3d 319, 360 N.E.2d 1192.) An allegation that certain property belonging to the estate is in the possession of the respondent, coupled with a prayer for a proper order by the court, has been found to be a sufficient basis for the trial court's jurisdiction. (*In re Estate of Weisberg* (1978), 62 Ill. App. 3d 578, 585, 378 N.E.2d 1152, 1157-58, and cases cited therein.) In *Weisberg*, the petitioner alleged that he was of the belief that respondents had wrongfully taken property belonging to the incompetent and that he had demanded the return of the property. The prayer for relief asked that the court direct the respondents to show cause why they should not be found in contempt for their failure to return the property and that the court grant such other relief as it may find to be fair and equitable. In the instant case, the second amended petition also recites that petitioner here is of the belief that respondent has wrongfully taken a certain sum of money belonging to Ms. DeKoekkoek, that he wrongfully exercised control over a certificate of deposit belonging to Ms. DeKoekkoek's estate, and that he has refused to return the money

involved to the estate. The petition specifically prays for a return both of the funds paid by Ms. DeKoekkoek as legal fees and of the amount by which the certificate of deposit was discounted. We therefore hold that the second amended petition was sufficient under section 16—1(a).

Respondent's reliance on *In re Estate of Lundmark* (1963), 42 Ill. App. 2d 80, 191 N.E.2d 657, is misplaced. In *Lundmark*, an attempt to use citation proceedings as a means of challenging what the petitioner claimed were excessive fees was held not to be within the purpose of the citation proceedings. Although the second amended petition contains an allegation that the fees charged by respondent were excessive and unjustified, the instant case is distinguishable from *Lundmark* in that the petition here contains other allegations as to the ownership of the money as well as a specific prayer for relief in compliance with section 16—1(a).

Respondent next contends that the finding that Ms. DeKoekkoek was incompetent during the time respondent represented her is against the manifest weight of the evidence. Preliminarily, however, respondent maintains that the retainer agreement could not be avoided on the grounds of Ms. DeKoekkoek's incompetency because it created an agency relationship and is thus enforceable under section 11—17 of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 11—17), which provides:

> "A principal for whom another acts under a written instrument of agency validly executed at a time when the principal was competent and before the filing of a petition for adjudication of the principal, shall be deemed to be competent for purposes of the agency and the agent's dealings with third persons until the principal is adjudged an incompetent or until the prior termination of the agency pursuant to the terms of the instrument. A third person dealing with the agent may presume, in the absence of actual knowledge to the contrary, that the instrument of agency was validly executed and that the principal was competent at the time of execution."[1]

Section 11—17 clearly applies to dealings of an agent of an incompetent with third parties and provides protection for the third parties. Section 11—17 is not applicable here, where it is the contract creating the agency relationship which petitioner seeks to void.

The case before us is controlled by section 11—16 (Ill. Rev. Stat. 1977, ch. 110½, par. 11—16), which provides in pertinent part:

> "* * * Every contract made with an insane, mentally ill, feeble minded or mentally deficient person, an idiot or an imbecile before

[1] Section 11—17 of the Probate Act of 1975 was repealed by Public Act 80—1415, effective January 1, 1979. A similar provision, section 11a—23, was added to the Probate Act by the same bill.

he is adjudged an incompetent * * * may be avoided except in favor of the person fraudulently making the contract."[2]

Section 11—16 and its predecessors have been interpreted to allow the avoidance of a contract upon a showing that the party was incompetent at the time the contract was signed, even if the contract was made prior to the party's adjudication as an incompetent. See, *e.g., Walton v. Malcolm* (1914), 264 Ill. 389, 106 N.E. 211.

■ Petitioner contends that there is ample evidence upon which to base the conclusion that Ms. DeKoekkoek was incompetent when she retained respondent. We disagree.

The only evidence presented by petitioner was in the form of respondent's section 60 testimony and exhibits admitted as he testified. The letter containing the retainer agreement was dated July 8, 1977, and no evidence was presented pertaining to Ms. DeKoekkoek's condition at the time she signed it.

Petitioner first relies on billing notations of conversations between respondent and others to support his contention that respondent knew Ms. DeKoekkoek was incompetent. For example, petitioner claims that notations of conversations with store merchants are evidence of Ms. DeKoekkoek's inability to transact ordinary business dealings. Petitioner also maintains that the notation of a conference with Ms. DeKoekkoek "regarding whether or not she is competent to handle [her] personal affairs" is proof that she was incompetent and that respondent knew that she was.

The instances cited by petitioner occurred after the retainer and fee agreements were signed and respondent did not begin to handle Ms. DeKoekkoek's personal affairs until some two months after she signed the retainer agreement. Furthermore, in spite of petitioner's contention that the notations show that respondent "obviously concluded" that Ms. DeKoekkoek was incompetent, at no time during the trial did petitioner directly question respondent regarding the conversations and transactions upon which the bills are based, nor were the other parties to the conversations called to testify. The notations merely show the fact that a conversation occurred without providing any actual detail as to its substance. While Supreme Court Rule 236(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 236(a)) provides for the admissibility of business records as evidence of an "act, transaction, occurrence or event," we find no authority, and petitioner has cited none, that would allow a notation of

---

[2] Section 11—16 of the Probate Act of 1975 was repealed by Public Act 80—1415, effective January 1, 1979, and a similar provision, section 11a—22, was added to the Probate Act by the same bill. Section 11a—22(b) provides for the avoidance of a contract made with "a mentally ill, developmentally disabled, or mentally deteriorated person before he is adjudged to be unable to so contract, and after a petition for the appointment of a guardian of the estate has been filed ° ° °."

the occurrence of a conversation to substitute for direct testimony by the participants as to the substance of that conversation. Nor can those same notations be used as evidence of respondent's personal opinions and conclusions formed as a result of the conversation.

Similarly, the fact that respondent may have referred Ms. DeKoekkoek for psychological examination does not tend to show that she was incompetent when she signed the retainer agreement. The referrals were made more than two months after the agreement was signed, none of the professionals who examined Ms. DeKoekkoek was called to testify, and no evidence of their conclusions was offered.

Petitioner maintains that the clearest evidence of Ms. DeKoekkoek's incompetence is contained in a statement found in a letter respondent sent to Ms. DeKoekkoek's sister. The statement, as quoted by petitioner, reads that Ms. DeKoekkoek's "course of [*sic*] pattern of conduct over the years (since 1960) leads *inexorably* to the conclusion that Louella is not able to *protect herself.*" (Petitioner's emphasis.) However, the statement takes on an entirely different meaning when read in its entirety and placed within its proper context. Ms. DeKoekkoek had originally sought respondent's services to attempt to avoid the 1972 trust. The letter was written on October 25, 1977, after Ms. DeKoekkoek had terminated respondent's services. It was apparently written in response to a letter from Ms. DeKoekkoek's sister, and reads, in pertinent part:

> "* * * I interpret your letter as an expression of concern but not as one retaining my services or outlining a specific course of action or result to be obtained. I simply cannot use Louella's money contrary to her expressed wishes.
>
> If I were to proceed on the basis that Louella is not competent, this would entail of necessity proof that Louella was incompetent prior to 1972 and that the Seventh Day Adventists were aware of this fact when she executed the document referred to as an 'irrevocable trust.' I am not sure that there are sufficient facts in this regard, particularly when Louella has been able to conduct her affairs, though marginally, as an individual.
>
> I have discussed Louella's case and your letter with two other lawyers and it is our consensus that I must stop all proceedings on Louella's behalf even though by doing so I am convinced that the Seventh Day Adventists will succeed in their exercise of undue influence and deprive Louella of her inheritance or will to combat their purposes. I am inclined to believe that if justice is to be done in this case, it will be at such a later time as a member of the family * * * is able to demonstrate to the Illinois Department of Mental Health that Louella's course or pattern of conduct over the years (since 1960) leads inexorably to the conclusion that Louella is not

able to protect herself and requires treatment in the field of mental health * * *."

It is clear that respondent did not believe that Ms. DeKoekkoek was incompetent and that he was writing with regard to his belief that the proof needed to avoid the original trust agreement was questionable and that he could proceed no further.

In light of our examination of the record, we conclude that there is no evidence to support the trial court's finding that Ms. DeKoekkoek was incompetent when she signed the retainer agreement. Nor is there any evidence to support the allegation that respondent fraudulently discounted one of the certificates of deposit. The only evidence regarding the discount was presented as part of respondent's case in the testimony of the broker from Wayne Hummer & Co., who testified that the certificate was sold at an extremely fair price after attempting to establish a market price for the certificate.

For the foregoing reasons, we reverse the findings of the trial court.

Reversed.

SULLIVAN, P. J., and LORENZ, J., concur.