HERMILO TORRES, Plaintiff and Counterdefendant, v. JAMES L. DIVIS *et al.*, Defendants (J. F. Heckinger *et al.*, Defendants and Counterplaintiffs; Hermilo Torres, Plaintiff and Third-Party Plaintiff-Appellant; J. Laird Lambert *et al.*, Defendant and Third-Party Defendant-Appellee).

Second District   No. 2—85—0191

Opinion filed June 24, 1986.—Rehearing denied July 28, 1986.

Theodore J. Craig, of Rochelle, for appellant.

Robert K. Clark and Lawrence R. Kream, both of Clark, McGreevy & Johnson, P.C., of Rockford, for appellee.

JUSTICE SCHNAKE delivered the opinion of the court:

J. L. Divis & Co., Inc., bought a restaurant in Rockford known as Davey J's Fish and Chips from J. F. Heckinger, Larry Short, and Mary Short (the Heckinger group). The exact terms of the sale are not set forth in the record, but it appears that, as part of the consideration, James and Dorothy Divis, two of the principals of the corporation, personally guaranteed an installment note payable to the Heckinger group. Subsequently, the Divises and their corporation began to have financial problems, so they sought out someone to take over the res-

taurant and to assume their obligations under the note. The people who eventually agreed to do so were John Powers, Albert and Lucy Eslora, and Hermilo Torres (the Powers group).

All of the parties involved in the transaction entered into a written novation agreement dated December 28, 1982. According to the terms of that agreement, the Heckinger group consented to the substitution of the Powers group "for J. L. Divis as debtor for obligations due and running to them [the Heckinger group]." The Powers group accepted those obligations and agreed to take over the management of the restaurant. The Divis corporation agreed to remain responsible for all business debts incurred before the novation. The Powers group signed an installment note securing the obligation to the Heckinger group.

After Powers, the Esloras, and Torres took over the restaurant, they became aware of numerous debts which had been incurred by the business before the novation. Some of the debts were secured by liens. The Divis corporation and the Divises were unable to pay the debts, and, as a result, the Powers group was unable to operate the restaurant at a profit.

Less than three months after the novation agreement had been signed, the Powers group filed an action for rescission of the novation agreement. The Heckinger group filed a counterclaim seeking judgment on the installment note. Following a bench trial, the court ruled that the agreement should not be rescinded, and judgment was entered in favor of the Heckinger group and against the Powers group on the installment note in the amount of $81,187.50.

Torres filed a third-party action against J. Laird Lambert, the attorney who represented the Divis corporation, and the Divises, in connection with the novation agreement, and against Lambert's law firm, Crosby & Lambert, a partnership, seeking reimbursement for any portion of the judgment he was required to pay. Torres also filed an original action against Lambert and his law firm seeking to recover $11,385, which Torres had invested in the restaurant. On motion of Lambert and his law firm, the court dismissed Torres' second amended complaint, and Torres has appealed pursuant to Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)). Other claims remain pending below.[1]

---

[1]Torres contends that one of the pending claims is the portion of his first amended pleading which purported to state a cause of action against Lambert for violation of the Illinois Securities Law of 1953. While it is true that that pleading was never dismissed, the claim is no longer pending because it was superseded by the second amended complaint, which included the securities law claim. See *In re Estate of DeKoekkoek* (1979), 76 Ill. App. 3d 549, 395 N.E.2d 113.

Torres' second amended complaint includes 10 counts. In this court, he has conceded that counts IV and IX were properly dismissed. Counts I and III sought judgment against Lambert for legal malpractice, count II for breach of contract, and count V for violation of the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1985, ch. 121½, par. 137.1 *et seq.*). Counts VI, VII, VIII, and X were based on the same theories of recovery and sought judgment against Lambert's law firm.

The motion to dismiss filed by Lambert and his law firm was brought under both sections 2—615 and 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, pars. 2—615, 2—619). Insofar as it was based on section 2—615, it alleged that each count failed to state a cause of action. Insofar as it was based on section 2—619, it attempted to refute what defendants considered to be a conclusory allegation in Torres' complaint to the effect that an attorney-client relationship existed between Lambert and Torres. An affidavit of Lambert was attached for that purpose. (See *In re Marriage of Musa* (1982), 103 Ill. App. 3d 189, 430 N.E.2d 727 ("affirmative matter" which may be raised under section 2—619 is something in the nature of a defense that negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint).) In response, Torres submitted an affidavit of his own, along with portions of a deposition of Powers' and of a transcript of Lambert's testimony at the bench trial. After the court granted the motion to dismiss, Torres filed a motion to reconsider along with certain other depositions and transcripts.

Before we undertake to evaluate the sufficiency of Torres' second amended complaint, it will be helpful to review some of the applicable principles. As stated in *Doyle v. Shlensky* (1983), 120 Ill. App. 3d 807, 811, 458 N.E.2d 1120:

> "Illinois is a fact-pleading State. This means that although pleadings are to be liberally construed and formal or technical allegations are not necessary, a complaint must contain those 'substantial averments of fact necessary to state a cause of action.' [Citations.] To state a cause of action a complaint must be both legally and factually sufficient; it must set forth a legally recognized claim as its basis for recovery and must plead facts which bring the claim within the legally recognized cause of action alleged. [Citation.] Failure to meet both requirements mandates dismissal of the complaint. [Citation.] When examining the legal sufficiency of a complaint, a court must assume

the truth of 'all facts properly pleaded' [citation], but it must ignore 'conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest' [citation]. A cause of action should not be dismissed on the pleadings unless it is clear that plaintiff can prove no set of facts which will entitle him to recover. [Citation.]''

With these principles in mind, we turn to a consideration of counts III and VIII of Torres' second amended complaint, which purport to state a cause of action for legal malpractice.

These counts alleged that on December 26, 1982, before the novation agreement was entered into, Powers went to Lambert's law office. He told Lambert that he, the Esloras, and Torres intended to form a corporation called Capricorn Investment, Inc., and to use the corporation to purchase Davey J's restaurant and the Second Chance Deli from J. L. Divis, Inc., and to manage the restaurants thereafter. Powers told Lambert that Torres was to provide financial support for Capricorn and would be a shareholder, officer, and member of the board of directors of the corporation. It is also alleged that Powers told Lambert these things for the purpose of retaining Lambert to represent Capricorn. Counts III and VIII also allege that an attorney-client relationship existed between Lambert and Torres which imposed a duty on Lambert to exercise ordinary care for the protection of Torres' financial interests. It is alleged that Lambert breached that duty by failing to discover the extent of the business debts incurred by the Divis corporation while it was managing Davey J's, and by failing to advise Torres not to enter into the novation agreement, nor to sign the installment note, nor to invest any money in the restaurant.

In his affidavit attached to the motion to dismiss, Lambert averred that Torres never asked him to represent Torres in any transaction, and that he was not present when Torres signed the novation agreement or the installment note. Lambert further stated that he was never present when Torres transferred funds to Powers or the Esloras, and that he (Lambert) had no knowledge of these transfers until Powers told him about them. Lambert indicated that he did not know whether the funds transferred were loans, gifts, or investments. Finally, Lambert stated that Torres never asked him to form a corporation or inquired of him "whether or when such corporation had been formed."

Torres' affidavit, filed in response, set forth that he had discussed investing in Capricorn with Powers and the Esloras before he signed any papers. Powers and the Esloras told him that Lambert was the lawyer for Capricorn. Finally, Torres stated that he believed Lambert

was representing him and would not have signed any papers but for that belief. The portions of Powers' deposition and Lambert's testimony at the trial, which Torres submitted, indicated that Powers retained Lambert at the meeting to form Capricorn. The other materials submitted by Torres in connection with his motion to reconsider do not add any material facts regarding the relationship between Lambert and Torres.[2]

■■ ■ A complaint for negligence, to be legally sufficient, must set out, *inter alia*, facts that establish the existence of a duty owed by the defendant to the plaintiff. (*Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96.) In a legal malpractice action, the facts must show that the plaintiff was a client of the defendant, or that the primary purpose of the attorney-client relationship between the defendant and a third party was to benefit the plaintiff. (*Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96; *York v. Stiefel* (1983), 99 Ill. 2d 312, 458 N.E.2d 488.) In the instant case the well-pleaded facts and the other materials submitted by Torres do not establish that he was Lambert's client. The attorney-client relationship is consensual and arises only when both the attorney and the client have consented to its formation. The client must manifest his authorization that the attorney act on his behalf, and the attorney must indicate his acceptance of the power to act on the client's account. (*York v. Stiefel* (1982), 109 Ill. App. 3d 342, 440 N.E.2d 440, *rev'd in part on other grounds* (1983), 99 Ill. 2d 312, 458 N.E.2d 488.) The relationship cannot be created by a third party who has no authority to act. (*Zych v. Jones* (1980), 84 Ill. App. 3d 647, 406 N.E.2d 70.) Here, although Torres has presented facts showing that Lambert agreed to represent Powers and to incorporate and to represent Capricorn, there are no facts in the record indicating that Lambert agreed to represent Torres. Torres argues that a person seeking to hire an attorney may use an agent to do so. We have no quarrel with that proposition, but there are no facts in this record to show that Powers asked Lambert to represent Torres, or that Lambert agreed to do so.

■■ Moreover, in our judgment, the facts do not demonstrate that the primary purpose of the attorney-client relationship between Lambert and Powers was to benefit Torres. The interests of the incorporators of a closely held business are not always the same, and they are often adverse. Each incorporator may seek to maximize his personal

---

[2]In his brief Torres alleges that Powers testified that Lambert agreed to represent "the persons forming Capricorn Investments Inc." That testimony does not appear in this record.

return and to minimize his personal contributions. In this setting, the fact that Powers requested Lambert to incorporate and represent a corporation in which Torres was to be involved does not prove that Powers' primary purpose was to benefit Torres. It would be unwise to impose on an attorney, retained by only one of several incorporators for the purpose of organizing a corporation, a duty to act on behalf of all of the incorporators in the absence of an agreement that he do so. Recognition of such a duty would create an unacceptably wide range of potential conflicts of interest. (See *Pelham v. Griesheimer* (1983), 92 Ill. 2d 13, 440 N.E.2d 96.) Torres has failed to plead or present facts demonstrating that Lambert owed him a duty of care. Accordingly, counts III and VIII were properly dismissed.

██ What we have said above in relation to counts III and VIII is also applicable to counts II and VII, which sought recovery based on breach of contract. In these counts Torres alleges that Lambert breached his agreement to provide Torres with proper legal representation. We have already concluded that there was no contract between Lambert and Torres whereby Lambert agreed to furnish Torres legal representation. Moreover, since the primary purpose of Powers' relationship with Lambert was not to benefit Torres, the latter was not a third-party beneficiary of the contract between Lambert and Powers. (See *Pelham v. Griesheimer* (1983), 92 Ill. 2d 13, 440 N.E.2d 96.) Accordingly, counts II and VII were properly dismissed.

██ We next consider counts I and VI. These counts also sound in legal malpractice, but not in the traditional theory discussed above. These counts are purportedly based on the principle that, when an individual relates information to an attorney with a view toward retaining him, even if the attorney rejects the representation and the attorney-client relationship never arises, the usual duties as to privileged communications apply to the information disclosed. (See *King v. King* (1977), 52 Ill. App. 3d 749, 367 N.E.2d 1358.) Apparently, Torres' theory is that disclosure by the attorney of confidential information received under such circumstances can be the basis of an action for legal malpractice even though the parties never entered into an attorney-client relationship. We need not decide this interesting issue, however, because Torres' claim for damages is not, in fact, based on such an improper disclosure.

In counts I and VI Torres alleges that when Powers met with Lambert on December 26, 1982, and told him about the plans of his group regarding the Capricorn corporation, including the plans to buy Davey J's Fish & Chips from the Divis corporation, Powers believed that the information he revealed would be held in confidence and was

subject to the attorney-client privilege. Torres alleges that Lambert did not inform Powers that he was representing Divis in connection with the sale of the restaurant, and Torres maintains that it was improper for Lambert to continue to represent the Divis corporation and the Divises in connection with the sale. While that may be true, Torres' claim for damages is not based on disclosure by Lambert to the Divises of the information Powers gave him. It is based on the fact that Lambert did not fully investigate the extent of the debts incurred during the operation of the restaurant by the Divis corporation and did not advise Torres to refrain from entering into the deal. While Lambert may have had a duty under *King* to avoid disclosure, he had no duty to advise Torres regarding the advisability of getting involved in the restaurant because, as we concluded above, Torres was neither his client nor a direct beneficiary of his attorney-client relationship with Powers. Accordingly, counts I and VI were properly dismissed.

■ The final two counts to be considered, counts V and X, are based on the Illinois Securities Law of 1953. It is alleged that the following letter, which Lambert signed on January 31, 1983, is a security:

> "To Whom it May Concern:
>
> This letter is to confirm the fact that Hermilo Torres has provided Capricorn Investments, Inc., with extensive financial backing. This financial backing is reflected by and evidenced by the following: Mr. Torres' inclusion as a party to a Novation Agreement running between Mr. J. F. Heckinger, Mrs. Mary Short and Mr. Larry Short as Sellers, and Mr. John Powers, and Mr. and Mrs. Alberto Esdora [sic] as Purchasers along with Mr. Torres, and by a security interest in property on the attached Exhibit "A."
>
> As counsel for Capricorn Investments, Inc., I represent the foregoing to be true and accurate to the best of my knowledge and belief.
>
> Very truly yours,<br>CROSBY & LAMBERT<br>s/ J. Laird Lambert"

Torres alleges that at the time Lambert signed the letter he knew that the Capricorn corporation had not been formed. He signed the letter, it is alleged, for the purpose of inducing Torres to invest more money in Capricorn at a time when Lambert was still representing the Divis corporation which had interests adverse to the incorporators

of Capricorn, and when Lambert sought to obtain money from Capricorn for his personal account. Lambert's conduct in this regard, Torres contends, amounts to fraud in connection with the sale of a security under sections 12(F), (G), and (I) (Ill. Rev. Stat. 1985, ch. 121½, pars. 137.12(F), (G), (I)).

In counts V and X Torres also alleges that the following document, signed by Powers on February 4, 1983, is a security:

"CAPRICORN INVESTMENTS INC.
1513 BROADWAY
ROCKFORD IL 61108

RECEIVED FROM HERMILO TORRES THE FOLLOWING INVESTITURES ACCORDING TO CORPORATE INVESTMENTS COMMITMENT.

JANUARY 2 1983 $3985.00 USED FOR EQUIPMENT AND SUPPLIES

JANUARY 10 1983 $2,000.00 USED FOR RENT

JANUARY 27 1983 $2,000.00 USED FOR LAWYER FEES AND DEPOSITS

JANUARY 31 1983 $1,400.00 USED FOR EQUIP AUCTION AND ARCADE DEPOSIT

FEBRUARY 3 1983 $2,000.00 USED FOR RENT

$20,000.00 COMMITTED
$11,385.00 RECEIVED
$ 8,615.00 BALANCE OF SECURED INVESTMENT

SECURITY AGREEMENT FOR INVESTMENTS FROM HERMILO TORRES, INCLUDES EQUIPMENT FROM THE DAVEY J'S LOCATION, THE EQUIPMENT FROM LUCY'S DONUT SHOP AND EQUIPMENT FROM THE COMMISSARY LOCATED IN THE CORPORATE OFFICE OF CAPRICORN INVESTMENTS.

THE EQUIPMENT AT THE ABOVE LOCATIONS HAVE [sic] A DEPRECIATED VALUE IN EXCESS OF $130,000.00. PER AGREEMENT WITH HERMILO TORRES, CAPRICORN INVESTMENTS INC. HAS THE OPTION TO CASH IN HERMILO'S SHARE IN THE CORPORATION AS VICE PRESIDENT WITHOUT ANY DESIGNATED TIME FRAME.

ABOVE INFORMATION COLLABORATED AND CONFIRMED BY THE FOLLOWING OFFICERS OF THE CORPORATION:

JOHN D. POWERS PRESIDENT s/John D. Powers
ALBERT ESLORA VICE PRESIDENT

LUCY ESLORA VICE PRESIDENT
HERMILO TORRES VICE PRESIDENT"

It is further alleged that various conduct of Lambert amounted to fraud in connection with the sale of this security.

In the trial court Lambert and his law firm argued that the documents set out above were not securities within the meaning of the securities law (Ill. Rev. Stat. 1985, ch. 121½, par. 137.2—1). They did not attempt, however, to explain why they were not. In this court they maintain that the documents are not securities because the well-pleaded facts show that Torres fails the "passive investor" test. (See *Condux v. Neldon* (1980), 83 Ill. App. 3d 575, 404 N.E.2d 523.) In response, Torres has presented no argument on the applicability of the passive-investor test to the facts set forth in the complaint. He argues only that Lambert and his law firm may not raise the issue for the first time on appeal.

Torres' argument is not well taken. When it appears as a matter of law that a complaint fails to state a cause of action, an objection may be made to it at any time by any means, and such objection may be raised for the first time on appeal. (*Midwest Bank & Trust Co. v. Village of Lakewood* (1983), 113 Ill. App. 3d 962, 447 N.E.2d 1358.) The argument of Lambert and his law firm, based on the passive-investor test, is that counts V and X fail to state a cause of action. Accordingly, that argument is properly before us.

As stated in *Condux*, quoting from *Polikoff v. Levy* (1965), 55 Ill. App. 2d 229, 234, 204 N.E.2d 807:

> " 'Both the Illinois and the federal courts have emphasized that a security within the meaning of the acts is a contract, transaction or scheme whereby one person invests his money in a common enterprise on the theory that he expects to receive profits *solely from the efforts of others*. [Citations.] The reason for excluding from the scope of the securities laws those transactions in which the profits do not come solely from the efforts of others is clear. In such situations, the member of the enterprise pools his money with that of others in the group; he has an equal right of control over the project and the opportunity and right to know what is going on. Because of this, the protection of the full disclosure offered by registration is not needed as it is in cases involving a nonparticipating investor.' "
> (Emphasis in original.) (*Condux v. Neldon* (1980), 83 Ill. App. 3d 575, 577-78, 404 N.E.2d 523.)

In *Condux*, the court held that the sale of all the stock of a corporation, which owned and operated a retail business, to two individuals

who operated the business thereafter was not within the purview of the securities laws because the purchasers of the stock were not passive investors. And in *Kaiser v. Olson* (1981), 105 Ill. App. 3d 1008, 435 N.E.2d 113, the court held that the sale of more than half of the stock of a corporation to a group of three people was not within the scope of the securities laws. Two of the three purchasers were actively involved in management and thus were not passive investors. Although the third was not actively involved in management, he had declined an opportunity to be on the board of directors. As to him the court stated, "We do not believe that the Illinois Securities Law is designed to protect as 'passive investors' those who are in a position to elect whether they will be 'active' or 'passive' investors." 105 Ill. App. 3d 1008, 1014, 435 N.E.2d 113.

■ In the instant case, the well-pleaded facts show that Torres was one of a group of four individuals who were planning to form Capricorn. In return for his investment, he was to become a member of the board of directors and a vice-president. He was not a passive investor, and the securities laws are, therefore, not applicable. Accordingly, counts V and X were properly dismissed.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

LINDBERG and STROUSE, JJ., concur.