ROBERT H. MICHEL, Plaintiff-Appellant, v. MISHAEL O. GARD *et al.*,
Defendants-Appellees.

Third District No. 3—88—0464

Opinion filed April 7, 1989.

Robert C. Strodel, of Strodel, Kingery & Durree, Associates, of Peoria, for appellant.

Joshua G. Vincent and Stephen R. Swofford, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, and David E. Jones, of Thomas & Hinshaw, Culbertson, of Peoria, for appellees.

JUSTICE SPITZ delivered the opinion of the court:

This appeal involves a legal malpractice action in the circuit court of Peoria County by plaintiff Robert H. Michel, against defendants Mishael O. Gard, individually, and Swain, Johnson, and Gard, a law partnership. Defendants filed a motion to dismiss plaintiff's amended complaint pursuant to section 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—619). After a hearing, the amended complaint was dismissed, with prejudice, on April 22, 1988.

On April 28, 1988, plaintiff filed a motion to reconsider. On June 17, 1988, the motion to reconsider was denied. Thereafter, plaintiff appealed.

Plaintiff's amended complaint is in two counts. The first count is an action in negligence against defendants to recover $14,480, plus costs. Count II is to recover the same damages under a third-party beneficiary theory. The facts alleged in plaintiff's amended complaint follow.

At all times relevant to this litigation, Gard is a licensed attorney practicing as a partner in the law firm of Swain, Johnson, and Gard in Peoria, Illinois. At some unspecified time in 1971, Phil C. Hauter sought legal counsel from defendants. It is alleged Hauter was acting for himself and as agent for the "potential" shareholders of a corporation, including plaintiff, which defendants were retained to set up. The corporation, known as Morton Towne House Inn, Inc., was to operate a motel and restaurant.

It is alleged that by virtue of performing the legal services pertaining to incorporation and issuance of shares of stock, defendants "assumed legal responsibility for properly creating said corporation, including all legal and reasonable protection of the shareholders, ex-

pressly including Plaintiff." It is further alleged that defendants negligently deviated from recognized standards for the practice of law relevant to formation of corporations, as practiced in Peoria, Illinois, and similar localities, by failing to qualify the corporate shares as section 1244 stock within the meaning of Internal Revenue Code (IRC) section 1244 (26 U.S.C. §1244 (1982)).

In 1985, the corporation became insolvent and the shares worthless. As a direct and proximate result of defendants' negligence, plaintiff was required to take a capital loss rather than an ordinary loss on his 1985 Federal and Illinois income tax returns, causing him to lose $14,480 which plaintiff would otherwise have been able to deduct. Plaintiff states he had no knowledge of the advantages of section 1244 until the corporation became insolvent in 1985.

In count II, plaintiff alleges that at the time of being retained to set up the corporation, defendants knew the shareholders would be Hauter, plaintiff, Joyce Lee Mueller, n/k/a Joyce Lee Jennings, Gerald C. Mueller, and Fred Novotny. Plaintiff alleges the retention of defendants was to act as attorneys not only for Hauter, but also for the named shareholders as third-party beneficiaries. It is further alleged the defendants owed a duty to said third-party beneficiary shareholders to see to it "that the corporation was organized properly, and that any stock issued by the corporation provided a reasonably advantageous means of distributing income and losses." In this, plaintiff relied on the professional legal knowledge, prowess, and skills of defendants to protect plaintiff's interests.

Defendants filed a section 2—619 motion (Ill. Rev. Stat. 1985, ch. 110, par. 2—619) to dismiss the amended complaint. In the motion, the defendants contend (1) defendants owed no duty to plaintiff, (2) the statute of limitations has run, or (3) the case is not yet ripe for litigation. Attached to the motion were the affidavits of Gard and James H. Bunce, a partner in defendant law firm. Both affidavits indicated Hauter was a regular client of the firm. Bunce indicated the firm had formed corporations for Hauter previously. Gard's affidavit stated Hauter, by letter dated May 3, 1971, requested Gard to organize Morton Towne House Inn, Inc. Gard states neither he nor any member of defendant firm had any contact with plaintiff, or had an attorney-client relationship with plaintiff, or was ever asked by Hauter to act as attorney for or on behalf of investors or potential investors in Morton Towne House Inn, Inc. Bunce's affidavit adds that all contacts were with Hauter and there were no conversations whatsoever with plaintiff. According to Bunce, Hauter never indicated an intent for defendant firm to act as attorneys for or on behalf of inves-

tors in the corporation, nor did Hauter or Hauter's accountants request qualification of the stock as section 1244 stock. From the outset, Gard assigned the formation of the corporation and subsequent representation of the corporation to Bunce.

The May 3, 1971, letter from Hauter was incorporated by reference into each of these affidavits. Because of its significance, the letter is quoted here in its entirety:

"May 3, 1971

Mr. Mike Gard
Savings Center Tower
Peoria, Illinois

Dear Mike:

Will you please set up for us a Delaware Corporation, TOWNE HOUSE INN, INC., with the following officers:

President:      Fred Novotny, 1704 St. Jude Ct., Peoria Heights, Ill.
Vice-Pres:      Robert H. Michel, 1029 N. Glenwood, Peoria, Ill.
Treasurer:      Gerald C. Mueller, 138 N. Indiana, Morton, Ill.
Secretary:      Joyce Lee Mueller, 138 N. Indiana, Morton, Ill.
Asst. Secy:     Phil C. Hauter, 746 W. Jefferson, Morton, Ill.

All of the above will be Directors.

The stock, total of which we will pay in, $50,000.00 will be broken down as follows:

Fred Novotny          30%
Robert H. Michel      20%
Gerald C. Mueller     16⅔%
Joyce Lee Mueller     16⅔%
Phil C. Hauter        16⅔%

Use Phil C. Hauter 746 W. Jefferson, Morton, Illinois, as the Registered Agent.

Jim Depler suggested that it might be advisable to have the shares in smaller amounts so that it would be easier to break down if anyone would make transfers. Use your own judgment on this, or you may if

you wish discuss it with Jim.

If you will let me know what checks (if any) are necessary to accompany the request, I will see that you get them.

The purpose of the corporation is to operate restaurant [*sic*] dispensing food and beverages. While we have no intention at this time to operate a motel, it appears to me there would [be] no harm in also specifying operating motel.

Best regards,

[Signed 'Phil']"

Plaintiff filed a response to the motion to dismiss the amended complaint arguing that sufficient facts had been alleged to raise the factual questions of attorney-client relationship and plaintiff's third-party beneficiary status to preclude dismissal. No counteraffidavits were attached. On March 31, 1988, a hearing was held on the motion to dismiss the amended complaint, and at the conclusion of the hearing, the matter was taken under advisement. On April 22, 1988, the trial court issued an order granting the motion and dismissing the amended complaint with prejudice.

Thereafter, plaintiff filed a motion to reconsider. In support of plaintiff's motion was plaintiff's affidavit, in paragraph 3 of which plaintiff states that the May 3, 1971, letter was written by Hauter at the request of plaintiff and the other incorporators, and that plaintiff authorized Hauter to act for plaintiff in retaining legal counsel and "doing those things necessary to incorporate *** including the issuance of shares of stock." In paragraph 4, plaintiff again states he had no "legal" knowledge as to the ramifications or possibilities of qualifying under section 1244 and relied solely on defendants' expertise to protect plaintiff's interest.

Additional support for plaintiff's motion to reconsider was added in the form of an affidavit by Novotny. Paragraphs 3 and 4 of Novotny's affidavit are identical to those paragraphs in plaintiff's affidavit.

Defendants filed a response to plaintiff's motion to reconsider, with no new affidavits attached. Defendants also filed an objection to the affidavits filed in support of plaintiff's motion to reconsider.

After a hearing held on June 13, 1988, the trial court denied the objection to plaintiff's affidavits. The disposition of the motion to reconsider was taken under advisement, and on June 17, 1988, the trial

court issued its order denying the motion to reconsider.

■ Before proceeding to further analysis, it seems appropriate to first review the standards to be applied by the trial court, as well as the standard of review in this case.

Section 2—619(a)(9) provides:

> "(a) Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds. If the grounds do not appear on the face of the pleading attacked the motion shall be supported by affidavit:
>
> * * *
>
> (9) That the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(9).)

The purpose of section 2—619 is to avoid duplicative and vexatious litigation between the parties (*Tambone v. Simpson* (1980), 91 Ill. App. 3d 865, 414 N.E.2d 533) and to provide a means of disposing of issues of law or of issues of fact which may be easily proved. (*Smith v. St. Therese Hospital* (1980), 87 Ill. App. 3d 782, 410 N.E.2d 219.) A section 2—619 motion must demonstrate a defect in the pleading by reference to a ground for dismissal based on a motion not appearing of record which is not a true affirmative defense and affords a defendant a form of a summary judgment procedure. (Ill. Ann. Stat., ch. 110, par. 2—619, Historical & Practice Notes, at 662 (Smith-Hurd 1983).) In *Consumer Electric Co. v. Cobelcomex, Inc.* (1986), 149 Ill. App. 3d 699, 703-04, 501 N.E.2d 156, 159, the court discussed the difference between section 2—619 motions and motions for summary judgment:

> "Although similar to a summary judgment motion, a section 2—619 motion differs in that the court may, in its discretion, decide questions of fact 'upon the hearing of the motion.' [Citations.] However, in deciding the merits of the motion, a trial court cannot determine disputed factual issues solely upon affidavits and counteraffidavits. If the affidavits present disputed facts, the parties must be afforded the opportunity to have an evidentiary hearing."

On appeal, all facts well pleaded are taken as true (*Haley v. Merit Chevrolet, Inc.* (1966), 67 Ill. App. 2d 19, 214 N.E.2d 347), as are all reasonable inferences which may be drawn from the alleged facts. (*Business Development Services, Inc. v. Field Container Corp.* (1981), 96 Ill. App. 3d 834, 422 N.E.2d 86.) In determining the propriety of the trial court's order of dismissal, then, the reviewing court's function is to review each count of the complaint and assess whether the

uncontested facts alleged in the counts of the complaint, standing alone, evidence any possibility of plaintiff recovering against defendants. If that possibility appears, the order of dismissal must be vacated. *Evans v. Control Products Corp.* (1979), 73 Ill. App. 3d 681, 392 N.E.2d 239.

Once dismissed, the trial court has the discretion to vacate the order of dismissal and reinstate the cause of action. (*Strong v. Hodges* (1951), 344 Ill. App. 306, 100 N.E.2d 667.) On review, the question to be resolved is whether the trial court committed an abuse of discretion in denying or granting the motion to vacate. In this case, there was no "motion to vacate," but it would seem plaintiff's "motion to reconsider" was designed to have the same effect and, therefore, the denial of the motion to reconsider should also not be reversed unless an abuse of discretion is found. Here, the motion to reconsider did not present any new "facts" to the trial court, and so if the trial court was correct in dismissing the complaint in the first place, then there was no abuse of discretion in denying the motion to reconsider.

One of the issues raised by plaintiff is whether the affidavits filed by defendants in support of the motion to dismiss were insufficient because they merely aver evidence upon which defendants would contest ultimate facts. This issue cannot be resolved in isolation, but requires consideration in conjunction with a review of the remaining substantive issues. Before proceeding to review the substantive issues, however, it seems appropriate to discuss the rules of law pertinent to the sufficiency of the affidavits.

■ A section 2—619 motion is not an appropriate method for a defendant to utilize merely to controvert the allegations of ultimate facts in the complaint. In deciding a section 2—619 motion, the trial court can decide conflicting claims on the basis of proper pleadings, supporting affidavits, counteraffidavits, and any evidence offered where no jury demand has been made or where no issue to be resolved by the jury is involved. After hearing the motion, the trial court may resolve genuine issues of material fact, rather than just determine their existence, but the trial court cannot weigh conflicting affidavits. (*In re Marriage of Musa* (1982), 103 Ill. App. 3d 189, 430 N.E.2d 727.) Where the matters claimed in the affidavit as a defense to the cause of action are nothing more than the evidence which defendant would expect to present in contesting facts alleged in the complaint, then the affidavits are insufficient to support a motion to dismiss based on " 'affirmative matter avoiding the legal effect of or defeating the claim.' " *Venezky v. Central Illinois Light Co.* (1988), 168 Ill. App. 3d 612, 613, 522 N.E.2d 901, 902; *Dangeles v. Marcus*

(1978), 57 Ill. App. 3d 662, 373 N.E.2d 645.

■ The central issue of the case is whether the amended complaint states facts from which the trial court should have found defendants owed plaintiff a duty. The trial court found defendants owed no duty to plaintiff under the facts alleged in the complaint and averred in the affidavits and both counteraffidavits. It is axiomatic that the existence or nonexistence of a duty is a question of law and is to be decided by the trial court. Therefore, while it is possible the trial court misinterpreted the law or misapplied the law to the facts alleged, the trial court did not misapply the standards for granting a section 2—619 motion to dismiss since the trial court merely considered an issue which was clearly within the court's province to decide.

In this case, the allegations are that defendants owed plaintiff a duty by reason of either (1) Hauter, as plaintiff's agent, hiring defendants to represent plaintiff or (2) plaintiff being a third-party beneficiary of the contractual relationship between Hauter and defendants. It is also alleged that defendants breached the duty to plaintiff by failing to qualify the corporation so that plaintiff could take advantage of IRC section 1244 when the stock became worthless. Plaintiff alleges defendants knew plaintiff would be a shareholder. Plaintiff does not allege he was an incorporator of the corporation.

The trial court found that *Torres v. Divis* (1986), 144 Ill. App. 3d 958, 494 N.E.2d 1227, was dispositive of this case. *Torres* (144 Ill. App. 3d at 963-64, 494 N.E.2d at 1231-32) states:

> "A complaint for negligence, to be legally sufficient, must set out, *inter alia,* facts that establish the existence of a duty owed by the defendant to the plaintiff. (*Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96.) In a legal malpractice action, the facts must show that the plaintiff was a client of the defendant, or that the primary purpose of the attorney-client relationship between the defendant and a third party was to benefit the plaintiff. (*Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96; *York v. Stiefel* (1983), 99 Ill. 2d 312, 458 N.E.2d 488.) In the instant case the well-pleaded facts and the other materials submitted by Torres do not establish that he was Lambert's client. The attorney-client relationship is consensual and arises only when both the attorney and the client have consented to its formation. The client must manifest his authorization that the attorney act on his behalf, and the attorney must indicate his acceptance of the power to act on the client's account. (*York v. Stiefel* (1982), 109 Ill. App. 3d 342, 440 N.E.2d 440, *rev'd in part on other grounds* (1983), 99 Ill. 2d

312, 458 N.E. 2d 488.) The relationship cannot be created by a third party who has no authority to act. (*Zych v. Jones* (1980), 84 Ill. App. 3d 647, 406 N.E.2d 70.) Here, although Torres has presented facts showing that Lambert agreed to represent Powers and to incorporate and to represent [the corporation], there are no facts in the record indicating that Lambert agreed to represent Torres. Torres argues that a person seeking to hire an attorney may use an agent to do so. We have no quarrel with that proposition, but there are no facts in this record to show that Powers asked Lambert to represent Torres, or that Lambert agreed to do so.

Moreover, in our judgment, the facts do not demonstrate that the primary purpose of the attorney-client relationship between Lambert and Powers was to benefit Torres. The interests of the incorporators of a closely held business are not always the same, and they are often adverse. Each incorporator may seek to maximize his personal return and to minimize his personal contributions. In this setting, the fact that Powers requested Lambert to incorporate and represent a corporation in which Torres was to be involved does not prove that Powers' primary purpose was to benefit Torres. It would be unwise to impose on an attorney, retained by only one of several incorporators for the purpose of organizing a corporation, a duty to act on behalf of all of the incorporators in the absence of an agreement that he do so. Recognition of such a duty would create an unacceptably wide range of potential conflicts of interest. (See *Pelham v. Griesheimer* (1983), 92 Ill. 2d 13, 440 N.E.2d 96.) Torres has failed to plead or present facts demonstrating that Lambert owed him a duty of care. Accordingly, counts III and VIII were properly dismissed."

Plaintiff goes to great lengths to try to distinguish *Torres*. First, unlike *Torres*, it is here alleged that Hauter was authorized to act as agent for plaintiff in obtaining counsel. Therefore, plaintiff contends, the attorney-client relationship between plaintiff and defendants could be created by Hauter. Here, however, plaintiff has not alleged he was an incorporator, as in *Torres*. Instead, he alleged only he was a "potential" shareholder. In setting up a corporation, an attorney would represent the incorporators, *not* the person who might later buy shares in the corporation. There is no allegation the corporation was not properly created pursuant to the laws of the State of Delaware.

Second, plaintiff argues that since it is common in closely held corporations for attorneys to represent a firm and all of its principals

in stock transactions, there should be a duty flowing from the attorneys to the shareholders. In support of this argument, plaintiff cites *Analytica, Inc. v. NPD Research, Inc.* (7th Cir. 1983), 708 F.2d 1263. However, *Analytica* is a conflict of interest case in which the law firms were disqualified from representing *Analytica* in a Federal antitrust suit. One of the law firms was retained by the three co-owners of NPD to work out an internal stock transfer to one of the co-owners as part of compensation. In that transaction, the only question was "the cheapest way of doing it." If the right answer was found, all three co-owners benefitted. Although one of NPD's accountants had a law degree and worked on the stock transfer, he was not acting as the co-owners' or NPD's lawyer. The court added:

"As is common in closely held corporations, [the attorney] was counsel to the firm, as well as to all of its principals, for the transaction. If the position taken by Schwartz & Freeman prevailed, a corporation that used only one lawyer to counsel it on matters of shareholder compensation would run the risk of the lawyer's later being deemed to have represented a single shareholder rather than the whole firm, and the corporation would lose the protection of the lawyer-client relationship. Schwartz & Freeman's position thus could force up the legal expenses of owners of closely held corporations." (*Analytica*, 708 F.2d at 1268.)

Thus, the same law firm was prohibited from representing *Analytica* in a lawsuit against NPD, which it formerly represented.

Initially, it should be noted that *Analytica* is not mandatory authority for this court. In addition, it seems clear from the opinion that the three co-owners of NPD hired the attorney to consider a matter of the compensation of a person who happened to be a shareholder. So all three hired the attorney, and the court found the attorney also represented the corporation in that transaction, for the limited purpose of determining a conflict of interest. However, the court went on to say that it was irrelevant whether the owner or the corporation was the client, for even if NPD did not retain the law firm, it did supply the law firm with confidential data of the type that would be supplied to retained counsel, and so there was a conflict of interest for the law firm regardless. In any event, the case does *not* decide that by representing a corporation, an attorney is also representing a shareholder. Furthermore, the nature of the stock transfer in *Analytica* was significantly different than that in the case at bar. In the case at bar, the attorney represented one incorporator and the corporation.

Arguably, there may be a duty on defendants to ensure the shares are properly issued so as to create ownership interests in the corporation. It may also be that defendants had a duty to advise Hauter of the possible benefits of IRC section 1244. But *Analytica* does not require defendants to represent plaintiff in the purchase of shares in a corporation and to make sure the shares qualify under IRC section 1244 when the other potential shareholders may well have a contrary interest.

Third, plaintiff contends that Hauter's letter asks the defendants to undertake the formation of the corporation on behalf of "us." Again, the act of creating the corporation is a function distinct and separate from advising one of the shareholders about the tax consequences of investing in the corporation. If plaintiff wanted tax counsel, he should have sought it. Had the corporation been improperly established, plaintiff may be correct in his agency theory.

■ It is for this same reason that plaintiff's argument as to the third-party beneficiary theory also seems to falter. The letter does not establish that the *primary purpose* for Hauter's contacting defendants was to benefit plaintiff. As *Torres* points out, to impose a duty on defendants to act on behalf of all potential shareholders would create an unacceptably wide range of potential conflicts of interest.

The remaining issues are whether plaintiff's claim was barred by the statute of limitations or whether plaintiff's claim was not ripe for litigation. The analyses of these issues are somewhat intermingled with the determination of the existence of a duty. Only if the court finds the existence of a duty which was breached need this court consider the questions of whether the statute of limitations has run or whether the cause of action is premature. Having determined that the trial court properly dismissed plaintiff's complaint for failure to allege a duty owed by defendants to plaintiff, these remaining issues need not be discussed.

Accordingly, the order of the circuit court of Peoria County is affirmed.

Affirmed.

McCULLOUGH, P.J., and KNECHT, J., concur.