Margaret AKINS

v.

**L. Joe EDMONDSON, et al.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Assigned on Briefs Dec. 19, 2005.

June 12, 2006.

Permission to Appeal Denied by
Supreme Court Nov. 6, 2006.

Denty Cheatham, Nashville, Tennessee, for the appellant, Margaret Akins.

Darrell G. Townsend, Nashville, Tennessee, for the appellees, Beth Edmondson and Gullett, Sanford, Robinson & Martin, PLLC.

## OPINION

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

This is an action by a non-client of a law firm, contending she sustained pecuniary damages due to the acts and omissions of the law firm. The non-client, Margaret Akins, served as the attorney-in-fact for an aged, blind and infirm lady, Josephine Notgrass. In her capacity as attorney-in-fact, Ms. Akins engaged an accounting firm to render professional services for Ms. Notgrass, including tax services and estate planning. The accounting firm recommended the creation of a limited partnership as a vehicle for annual gifting, which the client approved; whereupon the accounting firm engaged the law firm to prepare a limited partnership agreement. Preparation of the partnership agreement was the only service for which the law firm was engaged, and the law firm had no communication or consultation with the client, Ms. Notgrass, or her attorney-in-fact, Ms. Akins. All communications went through the accounting firm. Ms. Notgrass died soon after the partnership agreement was executed, and only one annual gift had been perfected at the time of her death. Contending the inheritance she expected was substantially diminished by the law firm's failure to suggest amending the will after the creation of the limited partnership, Ms. Akins brought this action. The trial court summarily dismissed the complaint finding Ms. Akins was not a client of the law firm and the firm owed no duty to Ms. Akins. We affirm in all respects.

Ms. Akins' relationship with Ms. Notgrass began in the 1970s when Ms. Akins was in high school. Ms. Notgrass was teaching high-school French and piano, and Ms. Akins was one of her students. While under Ms. Notgrass' tutelage, Ms. Akins developed a close relationship with her and eventually followed in her footsteps by continuing her education and teaching music at Cumberland College in Lebanon, TN. After teaching, Ms. Akins earned her real estate license and eventually her law degree.

Ms. Notgrass' husband passed away in 1989, after which, Ms. Akins began staying with and caring for Ms. Notgrass. Ms. Akins eventually moved in with Ms. Notgrass, and for the last few years of Ms. Notgrass' life, Ms. Akins lived with Ms. Notgrass and was her primary caregiver.

In 1991, Ms. Notgrass had a codicil prepared for her 1989 will, and in the codicil she deleted and revised bequests to her family members. This codicil was followed by a will that Ms. Notgrass executed in 1994 in which Ms. Notgrass bequeathed her Monroe County dairy farm to Ms. Akins. Ms. Notgrass also had stock in Valley Bank and the Farm Bureau, which she devised to Ms. Akins. The 1991 codicil and the 1994 will were prepared for Ms. Notgrass by an attorney in Madisonville, Tennessee. The Madisonville attorney also prepared a general and durable power of attorney designating Ms. Akins as attorney-in-fact for Ms. Notgrass.

With the power of attorney in hand, Ms. Akins returned to Nashville. In 1996, when Ms. Notgrass was in declining health, Ms. Akins engaged the Nashville accounting firm of Marlin & Edmondson to provide various services for Ms. Notgrass, including income tax and estate planning services. Ms. Akins specifically requested the accounting firm examine and revise Ms. Notgrass' federal income tax returns to minimize Ms. Notgrass' taxable estate. Marlin & Edmondson designated Scott Shepard, an accountant working in its estate planning section, to provide the estate planning services for Ms. Notgrass.

As a method for reducing Ms. Notgrass' taxable estate, Shepard recommended the creation of a limited partnership[1] in conjunction with a series of annual tax exempt gifts[2] of her interest in the limited partnership. Ms. Akins approved Shepard's recommendations. To implement the plan, and with Ms. Akins' consent, Shepard contacted attorney Beth Edmondson of the law firm of Gullett, Sanford, Robinson & Martin (collectively referred to as "Gullett") and engaged the law firm on behalf of Ms. Notgrass to prepare the limited partnership agreement. Pursuant to Shepard's recommended estate plan, Ms. Notgrass was to be the general partner, Ms. Akins was to be the only limited partner, and all of the assets of the partnership were to be provided by Ms. Notgrass. Ms. Akins' initial interest in the partnership was to be a gift from Ms. Notgrass, and the estate plan called for Ms. Notgrass to make additional annual gifts of partnership interests to Ms. Akins in amounts not to exceed the annual gift tax credit.

Gullet prepared the Limited Partnership Agreement, the Certificate of Limited Partnership, and a quitclaim deed of Ms.

---

1. At various places in the record, this limited partnership was referred to as a family limited partnership. Ms. Akins, however, was not family to Ms. Notgrass, and thus, the partnership could not be a family limited partnership.

2. The Federal tax exemption for gifts was $11,000 per donee per year when the plan was recommended and the partnership agreement was executed.

Notgrass' farm to the partnership, and forwarded the documents for Ms. Notgrass' approval and execution. The fee for Gullett's services was paid from Ms. Notgrass' funds.[3] Gullet did not provide any other services during Ms. Notgrass' life.[4]

Ms. Notgrass did not review the documents with Gullett, nor did Ms. Akins. Instead, Ms. Notgrass and Ms. Akins reviewed the documents with Ms. Notgrass' Madisonville attorney. On July 3, 1996, in the presence of her Madisonville attorney, Ms. Notgrass executed all three documents.[5]

▇ Ms. Notgrass died four months later, on November 8, 1996. At the time of Ms. Notgrass' death, Ms. Akins owned an 8.5% interest in the limited partnership and was the sole devisee of "the farm" in Ms. Notgrass' last will and testament, the 1994 will. Unfortunately for Ms. Akins, Ms. Notgrass no longer owned the farm. The farm was an asset of, and thus owned by, the limited partnership due to the quitclaim deed signed by Ms. Notgrass four months earlier. As a consequence, the devise of the farm to Ms. Akins lapsed because it adeemed by extinction.[6]

Ms. Akins attended to Ms. Notgrass' post-death affairs, including paying for her funeral and other final expenses. While attending to Ms. Notgrass' final affairs, Ms. Akins realized there may be a problem with her expectation of inheriting Ms. Notgrass' farm, as devised to Ms. Akins in the 1994 will. Thus, Ms. Akins sought advice from an unnamed attorney regarding how to transfer assets of the limited partnership to herself. Ms. Akins testified that the unnamed attorney advised her the partnership agreement did not authorize her to transfer Ms. Notgrass' interest to Ms. Akins. Hoping to find a way to transfer the balance of the farm to herself, Ms. Akins then sought the advice of Marlin & Edmondson, which in turn sought the advice of Gullet. Gullet recommended she consider a dissolution of the partnership. Marlin & Edmondson relayed this advice to Ms. Akins; however, Ms. Akins did not follow Gullett's advice. Instead, Ms. Akins sought the advice of two other attorneys, both of which advised her not to follow the advice relayed to her by Marlin & Edmondson.

After realizing she would not inherit the farm from Ms. Notgrass, as provided in the 1994 will, Ms. Akins filed this action against Marlin & Edmondson and Gullet. She contends the defendants negligently and erroneously recommended that she and Ms. Notgrass execute the limited partnership as a means of effectuating Ms. Notgrass' intended bequests under her will with the minimum tax consequences. Gullet filed an answer to the complaint contending it never had an attorney-client relationship with Ms. Akins and was not

3. Ms. Notgrass paid Gullet for the firm's services by personal check.

4. As we discuss later, Gullett was called upon for post-death advice.

5. Ms. Akins additionally signed the partnership agreement because she was a limited partner.

6. Ademption is generally defined as the extinction, alienation, withdrawal, or satisfaction of the legacy by some act of the testator by which an intention to revoke is indicated. *In re Estate of Hume*, 984 S.W.2d 602, 604 (Tenn.1999). Ademption by extinction results because of "the doing of some act with regard to the subject-matter which interferes with the operation of the will." *American Trust & Banking Co. v. Balfour*, 138 Tenn. 385, 198 S.W. 70, 71 (1917). The rule of ademption by extinction "is predicated upon the principle that the subject of the gift is annihilated or its condition so altered that nothing remains to which the terms of the bequest can apply." *Hume* at 604 (citing *Wiggins v. Cheatham*, 143 Tenn. 406, 225 S.W. 1040, 1041 (1920)).

negligent in the services it provided. Following discovery, Gullett filed a Motion for Summary Judgment. The trial court granted Gullet's Motion for Summary Judgment, from which order Ms. Akins appeals.

## STANDARD OF REVIEW

■■■ The issues were resolved in the trial court upon summary judgment. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson,* 100 S.W.3d 202, 205 (Tenn.2003). This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown,* 955 S.W.2d 49, 50–51 (Tenn.1997). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz,* 90 S.W.3d 692, 695 (Tenn.2002). When reviewing the evidence, we first determine whether factual disputes exist. If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall,* 847 S.W.2d 208, 214 (Tenn. 1993); *Rutherford v. Polar Tank Trailer, Inc.,* 978 S.W.2d 102, 104 (Tenn.Ct.App. 1998).

■■■ Summary judgments are proper in virtually all civil cases that can be resolved on the basis of legal issues alone, *Byrd v. Hall,* 847 S.W.2d at 210; *Pendleton v. Mills,* 73 S.W.3d 115, 121 (Tenn.Ct. App.2001); however, they are not appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. The party seeking a summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that party is entitled to judgment as a matter of law. *Godfrey v. Ruiz,* 90 S.W.3d at 695. Summary judgment should be granted at the trial court level when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion, which is the party seeking the summary judgment is entitled to a judgment as a matter of law. *Pero's Steak & Spaghetti House v. Lee,* 90 S.W.3d 614, 620 (Tenn. 2002); *Webber v. State Farm Mut. Auto. Ins. Co.,* 49 S.W.3d 265, 269 (Tenn.2001). The court must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, discard all countervailing evidence, and, if there is a dispute as to any material fact or if there is any doubt as to the existence of a material fact, summary judgment cannot be granted. *Byrd v. Hall,* 847 S.W.2d at 210; *EVCO Corp. v. Ross,* 528 S.W.2d 20 (Tenn. 1975). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Cherry v. Williams,* 36 S.W.3d 78, 82–83 (Tenn.Ct. App.2000).

## ANALYSIS

Ms. Akins raises seventeen issues and sub-issues on appeal, of which several are inartfully framed. We also find one of the issues to be, in part, a mis-characterization of both the trial court's conclusion and defendant's argument.[7] These deficiencies

---

7. On page 67, Appellant states an issue as follows: "The trial court erred in concluding the Attorney Defendants limited their role and liability to their client, Josephine Notgrass,

..." This is simply incorrect. The trial court did not conclude the defendants limited their liability. Moreover, the defendants did not contend liability was limited; they merely

notwithstanding, we have recast the issues we believe to be dispositive of this appeal. This appeal hinges on whether Ms. Akins was a client of Gullett and if so, did she sustain pecuniary damages as a result of negligent acts or omissions of Gullett; or, if she was not a client of Gullett, did the law firm supply false information upon which Ms. Akins reasonably relied to her pecuniary detriment.

At all times material to this action, Ms. Akins, a licensed attorney, was acting as attorney-in-fact for her elderly friend, Ms. Notgrass. During the last few months of her life, and the months most significant to this action, Ms. Notgrass was aged, blind, and in declining health.

▮ Although Ms. Akins engaged Marlin & Edmondson and Gullett to provide professional services on behalf of Ms. Notgrass, and paid their fees with Ms. Notgrass' funds, Ms. Akins contends the accountants and attorneys were engaged for Ms. Akins' benefit as well. Ms. Akins contends Gullett was to reduce Ms. Notgrass' taxable estate and advance Ms. Akins' expected inheritance via *inter vivos* gifts to Ms. Akins. The credible evidence, however, shows that Ms. Akins, acting in her capacity as attorney-in-fact on behalf of Ms. Notgrass, engaged the services of Marlin & Edmondson to render professional services for and on behalf of Ms. Notgrass and no one else. But for Ms. Akins' protestations during the pendency of this litigation, there is no credible evidence that suggests the defendants were engaged to represent Ms. Akins or to render services for the benefit of or on behalf of Ms. Akins.

▮ A cause of action for attorney malpractice requires *inter alia* a showing of "employment of the attorney." [8] *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn.Ct.App.2000). The attorney-client relationship is consensual and, significantly, it "arises only when *both the attorney and the client have consented* to its formation." *Torres v. Divis*, 144 Ill. App.3d 958, 98 Ill.Dec. 900, 494 N.E.2d 1227, 1230 (1986) (emphasis added). Moreover, the client must manifest her authorization that the attorney act on her behalf, and the attorney must indicate her acceptance of the power to act on the client's account. *Id.* The trial court found the evidence undisputed that Ms. Akins was not and had never been a client of Gullett. As the trial judge explained, "I find there are no genuine issues of material fact as to the existence of an attorney-client relationship between Ms. Akins and Gullett Sanford. There is no duty that exists therefore [sic] and there is no cause of action can exist ... for attorney-client malpractice and professional negligence since there is no duty." We concur with the trial court and find the evidence is undisputed that Ms. Akins was not and never had been a client of Gullett.

▮ The fact Ms. Akins was not a client of Gullett does not preclude a claim based upon professional negligence. The *Restatement (Second) of Torts* § 552, which Tennessee adopted in 1970, affords a narrow set of circumstances by which a non-client may have a cause of action against an attorney or law firm. Section 552 provides for a cause of action based upon information negligently supplied for

---

contend they had a limited engagement, and Ms. Akins was not their client.

8. For a plaintiff to prevail against an attorney for attorney malpractice, the plaintiff must show "1) employment of the defendants, 2)

neglect on the part of the defendants of a reasonable duty and, 3) damages resulting from such neglect." *Walker*, 40 S.W.3d at 71 (citing *Sammons v. Rotroff*, 653 S.W.2d 740, 745 (Tenn.Ct.App.1983)).

the guidance of others. In pertinent part it provides,

> One who, in the course of his ... profession ..., supplies false information for the guidance of others ... is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Restatement (Second) of Torts* § 552. The professional's liability, however, "is limited to loss suffered by the person ... for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction." *Restatement (Second) of Torts* § 552(2).[9] It is further significant to understand that liability exists "only in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended to supply it for that purpose." *Restatement (Second) of Torts* § 552, cmt. (a). Moreover, "[i]t is not enough that the maker merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon it...." *Id.; see Bethlehem Steel Corp. v. Ernst & Whinney*, 822 S.W.2d 592, 594 (Tenn.1991).[10]

The record before us is devoid of evidence that Gullett supplied false information for the guidance of Ms. Akin. In fact the only "information" Gullett provided were the three documents: the limited partnership agreement, the certificate of limited partnership, and the quitclaim deed to transfer the farm to the partnership. There is simply no evidence in the record, credible or otherwise, to suggest Gullett provided false information upon which Ms. Akins reasonably relied.

As an additional issue, Ms. Akins contends Marlin & Edmondson was engaged in the unauthorized practice of law by providing legal services, and that Gullett aided and abetted the unauthorized practice of law in violation of Tenn.Code Ann. § 23–3–103(b) and the Code of Professional Responsibility.[11] The record, however, presents no competent evidence to support either allegation, and the claim is barred by the statute of limitations.

▆▆▆ Ms. Akins' claim of professional misconduct fails to recognize that the Rules of Professional Responsibility do not establish a standard of care for attorneys upon which a legal cause of action can be based. *Wood v. Parker*, 901 S.W.2d 374, 379 (Tenn.Ct.App.1995). *The Rules are not designed to create a private cause of action for infractions* of disciplinary rules; they are designed to establish a remedy solely disciplinary in nature. *Lazy Seven Coal Sales v. Stone & Hinds*, 813 S.W.2d 400, 405 (Tenn.1991) (emphasis added). The same concept applies to the Rules of Professional Conduct, adopted effective

---

**9.** An exception, that is irrelevant to the facts before us, is found in *Restatement (Second) of Torts* § 552(3).

**10.** *Bethlehem Steel Corp. v. Ernst & Whinney*, 822 S.W.2d 592, 595 (Tenn.1991) cited *Stinson v. Brand*, 738 S.W.2d 186 (Tenn.1987) (holding the Restatement principles could extend to all professions). *Bethlehem Steel* also cited *Tartera v. Palumbo*, 224 Tenn. 262, 453 S.W.2d 780 (1970) for adopting principles later approved by the American Law Institute

in *Restatement (Second) of Torts* § 552 (1977) in connection with the liability of business or professional persons who negligently supply false information for the guidance of others in their business transactions and noting these principles could apply to attorneys. *Bethlehem Steel*, 822 S.W.2d at 595.

**11.** Now the Rules of Professional Conduct, effective March 1, 2003.

March 1, 2003. The Rules of Professional Conduct provide:

> Violation of a Rule should not give rise to a cause of action, nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulation conduct through disciplinary agencies. They are not designed to be a basis for civil liability.

Tenn. S.Ct. R. 8, Scope, (6). Ms. Akins' pursuit of a claim based, in part, on the alleged violation of a Rule of Professional Responsibility indicates a lack of familiarity with the Rules. A party and counsel would be well served to sufficiently familiarize themselves with the Rules of Professional Responsibility, now the Rules of Professional Conduct, before suggesting another lawyer is in violation of an ethical rule.[12]

Ms. Akins' claim that Marlin & Edmondson was engaged in the unauthorized practice of law and that Gullett was aiding and abetting the unauthorized practice of law in violation of Tenn.Code Ann. § 23–3–103(b) is time barred.[13] The claim was not asserted until Ms. Akins filed her Second Amended and Supplemental Complaint on July 21, 2003. The alleged offense, which Marlin & Edmondson is alleged to have committed, would have occurred in 1996 when it was paid by Ms. Notgrass for its services.[14] A plaintiff who claims to have been damaged by a non-lawyer practicing law or engaged in the business of law must commence the civil action within two years from the date the non-lawyer has been paid. Tenn.Code Ann. § 23–3–103(b). Ms. Akins delayed almost six years before commencing her claim based upon the alleged unauthorized practice of law; thus, it is time barred.

Finding the foregoing issues dispositive of all of Ms. Akins' claims, we see no reason to address the other issues.[15]

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Margaret Akins and her surety.

---

12. "A lawyer having knowledge that another lawyer has committed a violation of the Rules that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the Disciplinary Counsel of the Board of Professional Responsibility." Rules of Professional Conduct, Rule 8.3. As the comments to Rule 8.3 explain, the term "substantial" refers to the seriousness of the possible offense, and a measure of judgment is required in complying with the reporting provisions of this Rule.

13. Our brief analysis of this claim by Ms. Akins does not suggest it would be viable but for it being time barred.

14. The fact Marlin & Edmondson, as well as Gullett, contend the fees were remitted for accounting services and tax consultation, and Ms. Akins contends the services constituted the unauthorized practice of law is irrelevant to the issue of the Statute of Limitations.

15. Ms. Akins presented several claims and issues we have not discussed. They include, but are not limited to, assertions the trial court failed to make findings; that it erred in concluding Gullett limited its role; that it erred in concluding Ms. Akins acted as an attorney-in-fact; that it erred by failing to find all defendants acted in concert to cause Ms. Akins to lose her inheritance; and that it erred by failing to conclude Akins was the direct and intended beneficiary of their services and "must be considered their client."