IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 16, 2017 Session

**TRAY SIMMONS v. JOHN CHEADLE, ET AL.**

**Direct Appeal from the Circuit Court for Davidson County**
**No. 15C4276      Mitchell Keith Siskin, Judge**

---

**No. M2017-00494-COA-R3-CV**

---

This appeal involves a dispute between a judgment debtor and the attorneys for the judgment creditor.  In an effort to collect on a final judgment, attorneys for the judgment creditor served the judgment debtor with a notice of deposition.  After some discussion, it became clear that the debtor failed to bring the requested documents with him to the deposition, and the attorneys for the creditor refused to go forward with the deposition that day. The debtor then filed this separate lawsuit, pro se, against the creditor's attorneys alleging that they had taken an "unlawful deposition" of him.  The trial court granted summary judgment in favor of the attorneys for the judgment creditor.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and KENNY ARMSTRONG, J.J., joined.

Tray Simmons, Hermitage, Tennessee, *Pro se*.

Paul M. Buchanan, Nashville, Tennessee, for the appellees, John Roaten Cheadle, Jr., and Mary Barnard Cheadle.

**OPINION**

**I. FACTS & PROCEDURAL HISTORY**

Appellant Tray Simmons attended Middle Tennessee State University ("MTSU") from 1988 until 1993.  During that time, Mr. Simmons funded his education by obtaining student loans from MTSU.   When Mr. Simmons defaulted on these loans, MTSU employed attorneys John Cheadle and Mary Barnard Cheadle (collectively "Counsel") to

assist in recovering the past-due balance. To that end, MTSU, by and through Counsel, filed suit against Mr. Simmons, and in 2011 the trial court entered a judgment against Mr. Simmons for repayment of the student loan. Mr. Simmons appealed this judgment to the Court of Appeals. We affirmed the ruling of the trial court. *See Middle Tennessee State University v. Simmons*, No. M2011-00825-COA-R3-CV, 2012 WL 2244821 (Tenn. Ct. App. 2012).[1]

Although MTSU successfully secured a judgment against Mr. Simmons for the balance of his student loans, Mr. Simmons paid nothing to satisfy the judgment. (Exhibit CD) Therefore, in October 2014, Counsel served Mr. Simmons with a post-judgment notice of deposition in an attempt to discover assets. The notice of deposition provided that the deposition would be held on October 30, 2014, at Counsel's office, and that Mr. Simmons was required to bring several documents related to his financial status, including his tax returns and bank statements.

The events that transpired at Counsel's office on October 30, 2014, form the basis of the current lawsuit. Mr. Simmons recorded at least part of the exchange between himself and Mary Cheadle while he was at Counsel's office. Portions of the recorded discussion between Mary Cheadle and Mr. Simmons (which was transcribed by the Tennessee Board of Professional Responsibility[2]) are set forth below:

Cheadle:     Do you have your driver's license on you today?

Simmons:     Yes, why?

Cheadle:     May I take a look at it?

Simmons:     Uh, no . . . I refuse. . . .

Cheadle:     That's one of the documents I'm going to have to look at to do this deposition.

. . . .

---

[1]Rule 10 of the Rules of the Court of Appeals provides that "[w]hen a case is decided by memorandum opinion, it shall be [so designated], shall not be published, and shall not be cited or relied on for any reason in any unrelated case." Because the case at bar is a related case, we cite to our previous memorandum opinion only for procedural context.

[2]The transcript from the Board of Professional responsibility cites Mr. Simmons as speaking with an "unidentified female." However, the remainder of the record indicates that Mr. Simmons was speaking with Mary Cheadle during the recorded interaction.

Simmons:   Well I mean can you tell me . . . why in your letter, why didn't you . . . request that.

Cheadle:   Okay, well that's your identification.

Simmons:   It's one of the identifications.  I have many.

. . . .

Cheadle:   Did you bring any tax returns?

Simmons:   I don't have any tax returns.

. . . .

Cheadle:   Alright, where you living at?

Simmons:   4200 Rachel Donelson Pass.

Cheadle:   Alright, and where are you banking at?

Simmons:   I don't bank.

. . . .

Cheadle:   Alright, this is what I'm gonna do.  I'm going to file a motion to compel, to see your driver's license.

Simmons:   Well here –

Cheadle:   And all the documents.

Simmons:   . . . And I'm going to do a Motion . . . for Protective Order.

Cheadle:   Okay.

Simmons:   So we'll be just motioning.  So there it is.

Cheadle:   You don't own this property at Rachel Donelson Pass?

Simmons:   This is the same questions that was asked –

Cheadle:     Right. And you have yet to pay anything on this debt that you owe.

Simmons:     Exactly.

Cheadle:     So I'm going to keep going through these depositions until it's paid.

Simmons:     Okay. Let's go through all your questions.

Cheadle:     Alright, who owns that property?

Simmons:     You would have to ask them, I don't know that.

Cheadle:     You don't know who you live with there?

Simmons:     I know who I live with, yes.

Cheadle:     Okay, who are you living with?

Simmons:     Paul.

Cheadle:     And what's his last name?

Simmons:     I don't know his last name. You'll have to get that from him. You can pull the tax work.

Cheadle:     You don't know the [] last name of the person you live with?

Simmons:     I haven't asked him lately.

Cheadle:     Okay. I'm not going to go forward.


Based on this meeting between Mr. Simmons and Ms. Cheadle on October 30, 2014, Mr. Simmons, pro se, filed the instant lawsuit against Counsel on October 29, 2015, alleging that the "claim for relief of the Plaintiff arises from the illegal depositions conducted by Attorney John Cheadle and Attorney Mary Barnard Cheadle." In his complaint, Mr. Simmons alleged on the morning of the scheduled deposition he called Counsel's office and told them that he had shingles but that they would only reschedule

4

the time of the deposition and not the day. Mr. Simmons averred that the "illegal deposition" was conducted by Mary Cheadle on behalf of John Cheadle. Of particular importance to Mr. Simmons was the fact that no court reporter was present and that he was not sworn in before speaking with Mary Cheadle on October 30, 2014, which made the deposition "illegal." In his prayer for relief, Mr. Simmons requested $1,000,000.00 in compensatory damages, $1,000,000.00 in punitive damages, Rule 11 sanctions against Counsel for malicious prosecution, and disbarment of Counsel until they completed a minimum of 50 hours of ethics training.

Over the next year, Mr. Simmons filed more than fifteen pleadings in this case, including several motions requesting sanctions against Counsel, one alleging that Mary Cheadle committed "aggravated perjury" in her responses to interrogatories, a motion for recusal of the trial court judge, and a motion for default judgment based on Counsel's refusal to appear at a deposition that was unilaterally scheduled by Mr. Simmons. On July 29, 2016, Counsel filed a motion for summary judgment on all of Mr. Simmons' claims, contending that Mr. Simmons could prove no viable cause of action against them. Counsel's motion for summary judgment and Mr. Simmons' pending procedural motions were set to be heard on February 2, 2017.

At the hearing on February 2, 2017, the trial court heard Counsel's motion for summary judgment first due to it being potentially dispositive of the entire case, which would make Mr. Simmons' pending procedural motions moot. At this hearing, Mr. Simmons, representing himself, maintained that the events that transpired on October 30, 2014, constituted an "unlawful deposition" that caused him severe emotional distress, including a panic attack on the ride home. Although much of Mr. Simmons' argument was difficult to follow, he appeared to claim that he was also entitled to recover against Counsel for violations of the Tennessee Rules of Professional Conduct, professional negligence, negligent and intentional infliction of emotional distress, and malicious prosecution. At the conclusion of the parties' arguments, the trial court granted Counsel's motion for summary judgment on all of Mr. Simmons' claims. The court explained to Mr. Simmons that Tennessee did not recognize stand-alone claims for an unlawful deposition or alleged violations of the Rules of Professional Conduct. Further, Counsel was adverse to Mr. Simmons and owed him no duty, which negated an essential element of his claim of professional negligence. Regarding Mr. Simmons' claims of emotional distress, the court found that Counsel's actions were not intentional or reckless, and that Mr. Simmons lacked sufficient proof that he had been damaged by Counsel's actions. The court also dismissed Mr. Simmons' claim for malicious prosecution because the underlying case on Mr. Simmons' unpaid student loans had not been resolved in Mr. Simmons' favor. In light of the trial court's dismissal of all of Mr. Simmons' claims, the court declared the remainder of the motions set to be heard that day moot. The court reiterated its oral ruling in written findings of fact and conclusions of law on February 9,

2017.

## II. Issues Presented

Appellant presents a multitude of issues for review on appeal, which we have consolidated and restated as follows:

1. Whether the trial court erred in holding that there is no cause of action for an "illegal deposition" under Tennessee law?

2. Whether the trial court erred in holding that there is no private cause of action for violations of the Tennessee Rules of Professional Conduct?

3. Whether the trial court erred in granting summary judgment in favor of Appellees on Appellant's claims of professional negligence?

4. Whether the trial court erred in granting summary judgment in favor of Appellees on Appellant's claims of negligent and/or intentional infliction of emotional distress?

5. Whether the trial court erred in granting summary judgment in favor of Appellees on Appellant's claim of malicious prosecution?

6. Whether the trial court erred in denying Appellees' procedural motions as moot?

## IV. Discussion

We review a trial court's ruling on a motion for summary judgment de novo without a presumption of correctness. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party moving for summary judgment may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). When a motion for summary judgment is properly supported as provided in Tennessee Rule of Civil Procedure 56, in order to

6

survive summary judgment, the nonmoving party may not rest upon the mere allegations or denials of its pleading but must respond, and by affidavits or one of the other means provided in Rule 56, set forth specific facts at the summary judgment stage showing that there is a genuine issue for trial. *Id.* at 265. "[S]ummary judgment should be granted if the nonmoving party's evidence at the summary judgment stage is insufficient to establish the existence of a genuine issue of material fact for trial." *Id.* (citing Tenn. R. Civ. P. 56.04, 56.06).

1.    "Illegal Deposition"

Mr. Simmons argues on appeal, as he did before the trial court, that the events that transpired on October 30, 2014, at Counsel's office constituted an "illegal deposition" because "[t]he deposition was taken without a court reporter present, an oath was not given, [Mr. Simmons] was not sworn in and [Counsel] unlawfully obtained personal data for their personal gain." In his appellate brief, Mr. Simmons cites to several statutes and rules of civil procedure in support of his argument, none of which give rise to any claim for an "illegal deposition." As the trial court aptly noted, it has broad discretion under Rule 37.02 to prescribe penalties for violations of pretrial procedures during the course of ongoing litigation. *See* Tenn. R. Civ. P. Rule 37.01. However, nothing therein allows a party to file a separate cause of action for perceived violations of the rules of discovery, and Mr. Simmons has provided us with no other authority for such a claim. We therefore affirm the trial court's decision to grant summary judgment in favor of Counsel on Mr. Simmons' claim for "illegal deposition."

2.    Violations of the Tennessee Rules of Professional Conduct

Mr. Simmons argues at length on appeal about Counsels' alleged violations of the Tennessee Rules of Professional Conduct during the "illegal deposition." Mr. Simmons admits that he filed a complaint against Counsel with the Tennessee Board of Professional Responsibility and that the Board found in favor of Counsel. From what we can glean from the record and Mr. Simmons' argument, it appears that the allegations in his Board complaint were substantially similar to his allegations of wrongdoing in this case. Although the Board ultimately determined that Mr. Simmons' complaint was unfounded, Mr. Simmons' Board complaint was the proper procedural vehicle to pursue his claims of violations of the Rules of Professional Conduct against Counsel. The Tennessee Rules of Professional Conduct do not give rise to a private right of action. *See* Tenn. S. Ct. R. 8, Scope (21) (providing that "[v]iolation of a Rule should not itself give rise to a cause of action against a lawyer."). *See also Akins v. Edmonson*, 207 S.W.3d 300 (Tenn. Ct. App. 2006). Accordingly, we affirm the trial court's dismissal of Mr. Simmons' claim for violations of the Rules of Professional Conduct.

3.    Professional Negligence

The trial court also granted summary judgment on Mr. Simmons' claims of professional negligence and/or negligent misrepresentation against Counsel. Mr. Simmons acknowledges that Counsel was representing the opposing party during the deposition and that they are not liable to him for legal malpractice. Mr. Simmons relies on the following passage from section 552 of the Restatement (Second) of Torts in support of his theory of professional negligence:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b)  through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3)  The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Restatement (Second) of Torts § 552 (emphasis added). Mr. Simmons articulates no coherent argument on appeal as to how Counsel's actions toward him, when serving as opposing counsel in a debt-collection lawsuit, could be portrayed as professional negligence. The trial court appropriately relied on *Robinson v. Omer*, 952 S.W.2d 423 (Tenn. 1997), which emphasizes that Tennessee cases involving negligent misrepresentation allow recovery only when an attorney's advice was supplied in the course of a commercial or business transaction for the guidance of others in their business transactions. Such a situation is not at all analogous to the discussion between Mary Cheadle and Mr. Simmons on October 30, 2014. We affirm the dismissal of Mr. Simmons' claim for professional negligence.

4.      Negligent and/or Intentional Infliction of Emotional Distress

Mr. Simmons next asserts that the trial court erred in dismissing his claims for negligent and intentional infliction of emotional distress. Mr. Simmons claims that the "illegal deposition" caused him severe emotional harm. Specifically, Mr. Simmons states that he "had a panic attack due to the illegal deposition" during which Counsel engaged in "harassment, pressure, and negligence of care [with] knowledge of the Appellant having shingles." According to Mr. Simmons, he called his doctor on his drive home from the deposition to alert him of his panic attack, and the doctor gave him instructions to go home and rest.

The events that took place on October 30, 2014, related to Mr. Simmons' deposition do not give rise to a claim for negligent or intentional infliction of emotional distress for a litany of reasons. One of these reasons is that claims for intentional infliction of emotional distress and negligent infliction of emotional distress require a plaintiff to prove that he suffered severe or serious mental injury as a result of the plaintiff's actions. *See Lourcy v. Estate of Scarlett*, 146 S.W.3d. 48 (Tenn. 2004); *Camper v. Minor*, 915 S.W.2d 437 (Tenn. 1996). We affirm the trial court's holding that Mr. Simmons' bare statement that he had a panic attack and was told by a doctor to go home and rest does not constitute the emotional harm required to sustain a claim for intentional or negligent infliction of emotional distress.

5.      Malicious Prosecution

Mr. Simmons argues that the trial court erred in granting summary judgment in favor of Counsel because Counsel's actions taken in conjunction with their debt-collection efforts, particularly during the purported "unlawful deposition," were "malicious." Mr. Simmons' particular cause of action is not artfully stated, but it appears to be most akin to a claim for malicious prosecution. To establish a prima facie case of malicious prosecution, a claimant must prove three elements: "(1) a prior suit or judicial proceeding was instituted without probable cause, (2) defendant brought such prior action with malice, and (3) the prior action was finally terminated in plaintiff's favor." *Roberts v. Fed. Exp. Corp.*, 842 S.W.2d 246, 247-48 (Tenn. 1992). Mr. Simmons cannot establish the third element of a claim for malicious prosecution because the prior lawsuit, the debt-collection action, was not terminated in his favor. The trial court held, and we affirmed, that Mr. Simmons was in fact liable to MTSU for the delinquent student loan. *See Middle Tennessee State University v. Simmons*, No. M2011-00825-COA-R3-CV, 2012 WL 2244821 (Tenn. Ct. App. 2012). Because Counsel affirmatively negated an essential element of Mr. Simmons' claim for malicious prosecution, we affirm the trial court's dismissal of this claim.

### 6. Mr. Simmons' Procedural Motions

At the conclusion of the hearing on Counsel's motion for summary judgment on February 2, 2017, Mr. Simmons questioned the court regarding why Counsel's motion for summary judgment was heard first although he had a pending motion that was filed before the motion for summary judgment. The court patiently explained to Mr. Simmons that:

> [D]epending on the outcome of the summary judgment motion, that would determine whether or not the Court needed to take the time to sift through the various procedural motions to determine a path forward in the litigation or not, for example, motions about the sufficiency of interrogatory responses, things of that nature.
>
> And the Court agreed with [Counsel's] proposition that the dispositive motion should go first because depending on the outcome . . . .
>
> . . . of the motion for summary judgment, it could have, and, in fact, ultimately, did have the effect of making the other procedural matters moot.

Mr. Simmons was not satisfied with that response and continued to debate the issue with the trial court as he does now on appeal.

Although Mr. Simmons does not specify the precise motions that should have been heard before Counsel's motion for summary judgment or how they would have affected the ultimate outcome in this case, he insists that the trial court committed reversible error by refusing to hear and/or denying a myriad of motions before dismissing his case. Some of Mr. Simmons' pending motions were a motion to strike Counsel's interrogatory responses and for sanctions, a motion to strike Counsel's interrogatory responses based on an alleged forged signature, a motion to compel responses to discovery requests, and others. Even if the court heard and granted every one of Mr. Simmons' pending motions, it would have not changed the outcome of this case. Mr. Simmons' claims were dismissed as a result of his failure to allege facts that amounted to a viable cause of action. Continuing to engage in protracted litigation would not have solved that problem for him. We conclude that the trial court did not err in choosing to promote judicial economy by hearing Counsel's dispositive motion before Mr. Simmons' procedural motions.

## IV. CONCLUSION

For the foregoing reasons, affirm the order of the trial court. Costs of this appeal are taxed to the appellant, Tray Simmons. Because Tray Simmons is proceeding *in forma*

*pauperis* in this appeal, execution may issue for costs if necessary.


                                   _____
                                   BRANDON O. GIBSON, JUDGE