# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 6, 2017 Session

## CLAIR VANDERSCHAAF ET AL. v. VICTOR BISHARA ET AL.

**Appeal from the Circuit Court for Rutherford County**
**No. 66651     Howard W. Wilson, Chancellor**

———————————————————————

### No. M2017-00412-COA-R3-CV

———————————————————————

A two-person general partnership owned a real estate development.  When the bank providing financing for the development declined to renew the loan, one of the partners obtained bank approval for a short sale of the partnership assets to a third party.  Following the sale, the other partner, along with her husband, filed a complaint against the partnership's attorney and the partner for dissociation and damages.  Against the attorney, the partner and her spouse claimed legal malpractice and breach of fiduciary duty.  The breach of fiduciary duty claim related to the attorney's failure to disclose the details of the negotiations for the sale to the third party.  The trial court granted summary judgment to the attorney.  Based on the undisputed facts, we conclude that the attorney represented the partnership, not the individual partners, and had no duty to disclose all of one partner's activities to the other partner.  Thus we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Wm. Kennerly Burger, Murfreesboro, Tennessee, for the appellants, Clair Vanderschaaf and Donna Vanderschaaf.

Neil A. Brunetz and Robert F. Parsley, Chattanooga, Tennessee, for the appellee, Michael M. Wardlow.

# OPINION

## I.

### A.

In 2006, Clair Vanderschaaf and Victor Bishara, both experienced real estate developers, decided to purchase and develop a 57-acre tract in Rutherford County, Tennessee. For that purpose, they formed Stone Bridges at Three Rivers, LLC ("Stone Bridges LLC" or "the LLC") with themselves and Stones River Active Adult, LLC as members. Later, Stones River Active Adult withdrew from the LCC, leaving Mr. Bishara and Mr. Vanderschaaf as the only members.

Community First Bank of Columbia provided financing for the planned development, which was to consist of multiple townhomes. As security for the loan, Stone Bridges LLC executed a deed of trust on the Rutherford County property in favor of the bank. And as an additional credit enhancement, Mr. Vanderschaaf, Mr. Bishara, and their spouses personally guaranteed the loan to the bank.

Mr. Bishara's attorney, Michael Wardlow, prepared the operating agreement for Stone Bridges LLC. The operating agreement named three managers for the LLC, "a Chief Manager, a Secretary, and an Assistant Secretary." Mr. Bishara served as chief manager while Mr. Vanderschaaf and Mr. Wardlow served as secretary and assistant secretary, respectively.

The operating agreement also delegated rights and powers to manage and control the business and affairs of the LLC. *See* Tenn. Code Ann. § 48-249-401(e) (2012). As chief manager, Mr. Bishara directed the company's business and affairs, but he also had broad authority to carry out other acts on behalf of the LLC. The operating agreement specified as follows:

> Subject to the control of the members, the chief manager shall supervise and direct generally all of the business and affairs of the company. The chief manager shall have the authority to incur debt on behalf of the company and encumber any and all company property, transfer, sale or quit claim any or all company property that the chief manager, in his sole discretion, deems necessary to carry out the company's business. The chief manager shall have the authority to execute any and all documentation on behalf of the company which the chief manager, in his sole discretion, deems necessary in the normal course of business. The documents the chief manager is authorized to execute include but are not limited to Contracts, Warranty Deeds, Deeds of Trust, Promissory Notes, Loan Agreements, Hold Harmless Agreements, Indemnity Agreements, Owners

2

Affidavits, and any other document necessary to procure financing for the company.

Mr. Vanderschaaf, on the other hand, possessed no such powers. As secretary, he was responsible for keeping minutes, sending notices, and maintaining custody of the company's books and records.

The operating agreement granted Mr. Wardlow the "authority to sign any and all documents on behalf of the company that the chief manager [wa]s authorized to sign." As assistant secretary, Mr. Wardlow supervised closings and closing documents on behalf of Stone Bridges LLC for each townhome unit sold. Stone Bridges LLC also retained Mr. Wardlow as its attorney. In that capacity, Mr. Wardlow provided legal advice and drafted legal documents for the LLC as directed by Mr. Bishara.

Due to a nationwide economic recession, townhome sales slowed. As a result, the LLC struggled to service the bank loan. In 2011, the bank notified the members that Stone Bridges LLC was in default.

That same year, to save money on taxes, Mr. Vanderschaaf and Mr. Bishara decided to convert the LLC into a general partnership. *See id*. § 48-249-704 (2012). Before the conversion, Mr. Vanderschaaf assigned his membership interest to his wife. Donna Vanderschaaf signed and filed a certificate of conversion with the Tennessee Secretary of State's office. So, effective January 1, 2012, Mr. Bishara and Mrs. Vanderschaaf became equal partners in Stone Bridges at Three Rivers General Partnership.

In 2012, the bank notified the partners that the loan would not be renewed. Mr. Bishara and the Vanderschaafs discussed various options, including possibly selling the development. And both Mr. Bishara and Mr. Vanderschaaf began talking to potential buyers.

In May, Mr. Wardlow realized that, after the conversion, he lacked authority to sign closing paperwork on behalf of the partnership. And he had mistakenly signed documents on behalf of the LLC for a closing in March. To remedy the situation, he drafted a one-page partnership agreement incorporating the terms of the previous operating agreement. He sent the draft agreement to Mr. Bishara, requesting that he obtain the necessary signatures. Mr. Bishara, in turn, forwarded it to Jamie Callahan, the Vanderschaafs' assistant. After Mr. Callahan questioned the necessity of the agreement, Mr. Wardlow explained:

> Currently, absent a partnership agreement, no one has authority to sign on any closings, which we have to rectify ASAP, which means no more units can be sold without the signature of Clair and Victor. The Partnership

3

Agreement I drafted incorporated the attached operating agreement which keeps the business running as it has for the past 6 years. There is also a deed that needs to be rerecorded on a previous closing which I need to fix ASAP, so we need to get this issue resolved today, [p]lease.

Mr. Wardlow's explanation did not initially satisfy the Vanderschaafs. But three days later, Mr. Callahan notified Mr. Wardlow that Mr. Vanderschaaf had agreed to have his wife sign the partnership agreement. Donna Vanderschaaf signed the agreement on May 15, 2012, and Mr. Wardlow signed on behalf of Mr. Bishara as his attorney-in-fact.

But on the morning of May 24, Mr. Callahan, at the request of the Vanderschaafs, notified Mr. Wardlow:

Due to events that recently transpired, Donna is revoking her approval of the partnership agreement signed May 15, 2012. She has reason to believe that the circumstances given for the urgency of signing said agreement were false and misrepresented. And that you . . . knew of these misrepresentations and took part in them.

After speaking with the Vanderschaafs, Mr. Wardlow learned that there were "issues" between the partners. He then wrote to Mr. Callahan:

This accusation is without merit, and I take great offen[s]e. I explained what the "Partnership Agreement" was for and what it did. I had no other motives other than what was discussed. We have two closings. I am holding a lenders package and cashier's check on the closing for tomorrow. If this email is not rescinded today then I will have no choice than to send the package back to the lender and cancel the closing.

As far as your concerns regarding what Victor can and cannot do, as per the operating agreement, he can do what is necessary to carry out the normal course of business of the company. If selling ALL of the assets of the company, including undeveloped land, is in the normal course then he can sell it, but if it is not in the normal course of business then he cannot. Look back over the past 6 years and see what the normal course of business has entailed for Stone Bridges at Three Rivers, then you can answer that for yourselves.

I need your answer before 3:00PM so I can get the package for the buyer in the Fed-ex or send it back to the lender.

4

Shortly after the deadline, Mr. Callahan responded:

> I just informed Clair & Donna of your response below.  Clair said he had spoke[n] with you earlier today and after reading your opinion on the normal course of business, he feels Victor has stepped outside his authority in doing anything other than the sale of units.  Therefore, he is rescinding the [revocation] for the purpose of moving forward with closing of one unit scheduled for tomorrow and one unit scheduled for next week.

Meanwhile, Mr. Bishara obtained the bank's approval of a short sale of the partnership assets to the Terranova Group, LLC.  On June 28, 2012, the bank notified Mr. Vanderschaaf and Mr. Bishara that it intended to begin foreclosure proceedings if the sale did not close on June 29.  The bank agreed to waive its right to seek a deficiency judgment against the guarantors if the sale closed as planned.  In light of the bank's position, the Vanderschaafs did not try to stop the sale.  Mr. Bishara signed the closing documents on behalf of the partnership.

After the closing, the Vanderschaafs, the Bisharas, and the bank executed a "Termination of Guaranties" Agreement, in which the bank released the guarantors in exchange for approval of the sale.[1]  But the Vanderschaafs later discovered that Mr. Bishara collected a $95,000 consulting fee from the Terranova Group for facilitating the sale.

B.

On June 27, 2013, Clair and Donna Vanderschaaf filed a complaint for partnership dissociation and breach of fiduciary duty in the Circuit Court for Rutherford County, Tennessee, against Victor Bishara and Michael Wardlow.  This appeal concerns only the claims against Mr. Wardlow.  According to the complaint, Mr. Wardlow misrepresented "the status of the operating agreement, and manipulate[ed] the terms (in breach of his fiduciary duty to Plaintiffs) in a manner which would permit Defendant Bishara . . . to unilaterally effect partnership decisions, including the unauthorized sale of the partnership as a minority owner."  The complaint also alleged that Mr. Wardlow breached his fiduciary duty "as an attorney providing legal advice for the purported mutual benefit of all participants in the business entity" by focusing "on advancing the

---

[1] Although the Vanderschaafs were released from their guaranties, they complain that they also forfeited a "million-dollar piece of property."  While the record is unclear, it appears that, after Stone Bridges LLC defaulted on the bank loan, Veneer Magnates, LLC, a company in which Mr. Vanderschaaf had an ownership interest, pledged the property as additional collateral to secure the loan.  Mr. Vanderschaaf testified that the bank kept the property after the sale and that he refused to pay the "exorbitant" asking price to repurchase the property.

individual interests of his friend and associate, Defendant Bishara." The complaint further alleged that Mr. Wardlow's failure "to disclose full and complete facts to all partners" constituted legal malpractice.

Mr. Wardlow moved for summary judgment, both on the Vanderschaafs' claims and a counterclaim he asserted for indemnification. Regarding the Vanderschaafs' claims, he maintained that the undisputed evidence demonstrated that the Vanderschaafs agreed to or ratified the sale, he did not manipulate the terms of the partnership agreement or make any misrepresentations to the Vanderschaafs, and the legal malpractice claim was barred by the statute of limitations.

The Vanderschaafs asserted that genuine issues of material fact precluded an award of summary judgment to Mr. Wardlow. They argued that Mr. Wardlow knew about Mr. Bishara's negotiations with the Terranova Group in May 2012 and failed to adequately inform them. Although they were generally aware that Mr. Bishara was seeking buyers for the partnership property, they did not know specific details, particularly the terms of the consulting agreement.

The trial court granted Mr. Wardlow's motion for summary judgment on the Vanderschaafs' claims.[2] The court declined to rule that the legal malpractice claim was untimely. Rather, the court determined that Mr. Wardlow represented the partnership, not the individual partners, and the Vanderschaafs failed to produce any evidence that Mr. Wardlow breached a duty to the partnership or misrepresented material facts to the Vanderschaafs. After the court certified its order as final, the Vanderschaafs filed this appeal. *See* Tenn. R. Civ. P. 54.

## II.

The issue on appeal, as framed by the Vanderschaafs,[3] is:

[D]o genuine issues of material fact exist which would preclude the granting of summary judgment dismissal on the claims of legal malpractice against Attorney Michael Wardlow? Specifically: (1) Did Wardlow owe a fiduciary duty to disclose hidden facts to the Vanderschaafs; and (2) (for purposes of the statute of limitations), are there disputed material facts regarding what the Vanderschaafs knew, and when they learned it[?]

---

[2] The court denied Mr. Wardlow summary judgment on his indemnification claim.

[3] At oral argument, counsel for the Vanderschaafs clarified that this appeal concerned only Donna Vanderschaaf's claims against Mr. Wardlow for legal malpractice and breach of fiduciary duty. Because we conclude that Mr. Wardlow did not have an attorney-client relationship with Mrs. Vanderschaaf, we decline to address whether the claim was barred by the statute of limitations.

6

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party moving for summary judgment has "the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If the moving party satisfies its burden, "the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial." *Id.*

In this case, the party moving for summary judgment did not bear the burden of proof at trial. Thus, the moving party's burden of production could be satisfied "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015), *cert. denied*, 136 S. Ct. 2452 (2016). Satisfying this burden requires more than a "conclusory assertion that summary judgment is appropriate"; rather the movant must set forth specific material facts as to which the movant contends there is no dispute. *Id.*

If a motion for summary judgment is properly supported, the nonmoving party must then come forward with something more than the allegations or denials of its pleadings. *Id.* at 265. The nonmoving party must "by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' *at the summary judgment stage* 'showing that there is a genuine issue for trial.'" *Id.* (quoting Tenn. R. Civ. P. 56.06).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. Accordingly, we must review the record de novo and make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

A.

A legal malpractice claim requires proof of: (1) an attorney-client relationship; (2) conduct that violated the standard of care; and (3) damages. *See Sanjines v. Ortwein & Assocs., P.C.*, 984 S.W.2d 907, 910 (Tenn. 1998); *Jamison v. Norman*, 771 S.W.2d 408, 409 (Tenn. 1989). Mrs. Vanderschaaf had the burden of proving that she had an

7

attorney-client relationship with Mr. Wardlow. *See Akins v. Edmondson*, 207 S.W.3d 300, 306 (Tenn. Ct. App. 2006).

The attorney-client relationship is consensual, meaning both the attorney and the client must consent to the representation. *State v. Jackson*, 444 S.W.3d 554, 599 (Tenn. 2014); *Akins*, 207 S.W.3d at 306. And Mr. Wardlow testified that he only represented the partnership. A partnership is a legal entity. Tenn. Code Ann. § 61-1-201(a). An attorney retained by a partnership represents the partnership through its constituents. *See* Tenn. Sup. Ct. R. 8, R.P.C. 1.13(a). Even so, "[a] lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the [conflict of interest rules]." *Id.* R.P.C. 1.13(f) & cmt. 1. Thus, "a lawyer who represents a partnership represents the entity rather than the individual partners unless the specific circumstances show otherwise." ABA Comm'n on Ethics & Prof'l Responsibility, Formal Op. 91-361 (1991).

Although we find no evidence in this record that Mr. Wardlow expressly consented to represent Mrs. Vanderschaaf, an attorney's consent may be implied from his conduct. *See Stinson v. Brand*, 738 S.W.2d 186, 190 (Tenn. 1987) (concluding that members of law firm "so far involved themselves in the transaction that a trier of fact could find that they were representing multiple interests"). An attorney-client relationship may arise when a prospective client expresses to the lawyer an intent that the lawyer provide legal services, and "the lawyer fails to manifest a lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services." *Jackson*, 444 S.W.3d at 599-600 (quoting RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 14 (AM. LAW INST. 2000)); *see also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 14 cmt. e ("In many such instances, the lawyer's conduct constitutes implied assent.").

We must consider whether Mrs. Vanderschaaf had a reasonable and apparent expectation that Mr. Wardlow had agreed to represent her under the circumstances. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 14 cmt. f. An attorney-client relationship with an individual partner "is more likely to be found when the lawyer performs personal legal services for an individual as well or where the organization is small and characterized by extensive common ownership and management." *Id.*; *see In re Conduct of Brown*, 956 P.2d 188, 198 (Ore. 1998) (holding that partner's belief that partnership attorney represented him individually was reasonable when attorney had represented the partner in personal matters and the partner had relied on the attorney's legal expertise for a number of years). But communicating with a partner regarding partnership business does not, by itself, create an attorney-client relationship even if the communication is also relevant to the partner's personal business. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 14 cmt. f.

8

Although this partnership was small, significantly, Mr. Wardlow's interactions with Mrs. Vanderschaaf were limited to partnership business. Mr. Wardlow testified that he rarely had direct communication with Mrs. Vanderschaaf or her husband and, when he did, the communication concerned partnership business, such as the closing of a unit sale. Mr. Wardlow also alleged in his counterclaim for indemnification that all his statements to the Vanderschaafs involved partnership business. The Vanderschaafs neither admitted nor denied these allegations; thus they are deemed admitted. *See* Tenn. R. Civ. P. 8.04; *Dyer v. Farley*, No. 01-A-01-9506-CH00229, 1995 WL 638542, at *10 (Tenn. Ct. App. Nov. 1, 1995).

Mrs. Vanderschaaf's affidavit is consistent with Mr. Wardlow's testimony. She stated:

> My husband and I had no dealings with attorney Michael Wardlow, except through Mr. Bishara. We became aware that he and Mr. Bishara were close friends and business associates, and that Mr. Wardlow had provided substantial legal representation for Bishara. For that reason, we did not object to his involvement in handling the real estate lot closings. As a result of his day-to-day involvement in those closings, we remained in close and frequent contact with Mr. Wardlow and his office, as he regularly gave us legal advice.

Given her involvement in sales and marketing for the project, Mrs. Vanderschaaf had direct contact with Mr. Wardlow when a closing occurred. Nothing in Mrs. Vanderschaaf's affidavit indicates or suggests that Mr. Wardlow's legal advice concerned anything other than the closings of partnership property.

Mr. Wardlow had no previous relationship with Mrs. Vanderschaaf, never performed legal services for her personally, and never provided legal advice other than what was necessary as the partnership's attorney. Mr. Wardlow's email to Mr. Callahan addressing the Vanderschaafs' concerns about Mr. Bishara's authority under the partnership agreement does not suggest an attorney-client relationship between Mr. Wardlow and Mrs. Vanderschaaf. In her own words, the email exchange was "very contentious," hardly the type of communication a client has with an attorney.

We conclude that Mrs. Vanderschaaf failed to produce evidence sufficient to create a genuine issue of material fact on the existence of an attorney-client relationship. *See Goodwin v. Dunlap*, No. W2002-00014-COA-R3-CV, 2002 WL 31787495, at *6 (Tenn. Ct. App. Dec. 10, 2002). Mr. Wardlow represented the partnership. Without an attorney-client relationship, the legal malpractice claim must fail. *See PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 543 (Tenn. Ct. App. 2012).

## C.

We also conclude that Mr. Wardlow had no separate duty to disclose the details of Mr. Bishara's negotiations with the Terranova Group to Mrs. Vanderschaaf. The existence or nonexistence of a duty owed by the defendant to the plaintiff is a question of law for the court to decide. *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993).

A common law[4] duty to disclose information arises "when (1) there is a fiduciary relationship between the parties; (2) one of the parties has expressly reposed trust and confidence in the other; or (3) the contract is intrinsically fiduciary and calls for perfect good faith." *Cont'l Land Co. v. Inv. Props. Co.*, No. M1998-00431-COA-R3-CV, 1999 WL 1129025, at *6 (Tenn. Ct. App. Dec. 10, 1999). An attorney has a fiduciary relationship with his client. *See Cooper & Keys v. Bell*, 153 S.W. 844, 846 (Tenn. 1913). But Mrs. Vanderschaaf was not Mr. Wardlow's client. And there was no claim of a contract of any other sort between Mr. Wardlow and the Vanderschaafs. So we must consider whether the Vanderschaafs expressly reposed trust and confidence in Mr. Wardlow.

While Mrs. Vanderschaaf testified that she trusted Mr. Wardlow, her testimony falls short. Before a duty to disclose will arise, we require proof that the defendant knew or should have known that (1) the plaintiff was placing trust and confidence in the defendant and (2) the plaintiff was relying on the defendant to provide this type of information. *See Homestead Grp., LLC v. Bank of Tenn.*, 307 S.W.3d 746, 754 (Tenn. Ct. App. 2009); *Macon Cty. Livestock Mkt., Inc. v. Ky. State Bank, Inc.*, 724 S.W.2d 343, 351 (Tenn. Ct. App. 1986). Under the facts presented here, we conclude Mr. Wardlow had no reason to know that Mrs. Vanderschaaf was relying on him to provide information on Mr. Bishara's activities.

An attorney has an affirmative duty to disclose information to a nonclient only in rare circumstances. *See Gray v. Boyle Inv. Co.*, 803 S.W.2d 678, 683 (Tenn. Ct. App. 1990); *Cont'l Land Co.*, 1999 WL 1129025, at *7. In *Gray v. Boyle Investment Co.*, the closing attorney, employed by the seller, charged the buyer an attorney's fee and a closing fee, closed the transaction, and disbursed the buyer's funds to the seller knowing that the buyer was unaware of ongoing foreclosure proceedings. 803 S.W.2d at 683. In *Continental Land Co. v. Investment Properties Co.*, the attorney executed a contract to sell property to a nonclient and deliberately drafted the closing documents to convey less property than contemplated in the sales contract. 1999 WL 1129025, at *3. In both cases, the attorney knew that the nonclient was unaware of information material to the

---

[4] By statute, both partners and the partnership have a duty to disclose certain information. Tenn. Code Ann. § 61-1-403 (2018). And partners owe a fiduciary duty to the partnership and the other partners. *See id.* § 61-1-404 (2018).

transaction. And the attorney knew or should have known that the nonclient was relying on him to disclose information relevant to the transaction. *See id.* at *7-8; *Gray*, 803 S.W.2d at 683. None of these circumstances are present here.

## D.

Finally, as they explain in their brief, the Vanderschaafs elected "to present the claim in their individual names, rather than on behalf of the general partnership." We have not been asked to consider, nor do we offer an opinion about, whether Mr. Wardlow violated any duty to the partnership.

## III.

Based on the undisputed facts, Mr. Wardlow did not have an attorney-client relationship with Mrs. Vanderschaaf or a duty to disclose information about Mr. Bishara's activities. So we affirm the grant of summary judgment to Mr. Wardlow on the claims for legal malpractice and breach of fiduciary duty.

_____
W. NEAL MCBRAYER, JUDGE

11